[No. 28669.    Department Two.    July 30, 1942.]

THE STATE OF WASHINGTON, *Respondent*, v. RAYMOND L. HUEY, *Appellant*.[1]

*George M. Martin,* for appellant.

*Lloyd L. Wiehl* and *Owen Clarke,* for respondent.

JEFFERS, J.—On October 7, 1941, defendant, Raymond L. Huey, was by information filed in the superior court for Yakima county, charged with the crime of taking indecent liberties with a female under the age of fifteen years, to wit, of the age of three years.   See Rem. Rev. Stat. (Sup.), § 2442 [P. C. § 9114]. On November 17th, defendant was arraigned, and he entered a written plea of not guilty, and also a special

[1]Reported in 128 P. (2d) 314.

plea of not guilty by reason of mental irresponsibility at the time of the act alleged in the information, further stating in his special plea that he has become mentally responsible since the time of the alleged act. Thereafter, on the same day, the cause came on for trial before the court and jury, and resulted in a verdict of guilty. A motion for new trial was made and denied, and judgment and sentence on the verdict was imposed on December 10, 1941. Oral notice of appeal was given by the defendant on December 10, 1941.

Appellant contends that the trial court erred in withdrawing from the consideration of the jury the question of mental irresponsibility, as covered by instructions Nos. 5, 6, 7, 8, and 9, originally submitted to the jury; in giving to the jury new instructions Nos. 5 and 8, together with introductory and closing instructions therewith; and in refusing to grant appellant's motion for a new trial.

It is not contended that there was not sufficient evidence to warrant the jury in finding that the act charged in the information was committed by appellant. Neither is there any claim that the trial court exceeded its power, in so far as the time and manner in which the above instructions were withdrawn and new instructions given is concerned, but the sole question argued by appellant is that the court erred in withdrawing from the consideration of the jury the question of the mental irresponsibility of appellant at the time of the alleged act.

We shall set out the substance of the testimony which we deem necessary to consider in a determination of the question presented. Robert Alderson, an employee of the Pacific Power & Light Co., and Archibald Woest, the driver of a milk wagon, were called by the state. They both testified that, on October 6, 1941, in Yakima, Washington, about eleven-thirty in

the morning, they saw appellant taking liberties with the person of a little girl about three years of age. They described just what they saw take place. The substance of this testimony was that they saw appellant sitting on the curb of the street, in a location more or less protected from houses by low trees; that, when first seen, the little girl named in the information was lying on the ground, with her dress pulled up, and appellant had his hand on her privates; that appellant then took the little girl on his lap, where he continued the same operation.

Mr. Woest testified that he stopped his truck, and asked appellant what he was doing, and told him to leave the child alone; that appellant answered, "I ain't doing nothing"; that, at the time Mr. Woest spoke to appellant, he had the child on his lap, but immediately released her and she went down the street. This witness further testified that he talked to appellant, and did not notice anything to indicate appellant was intoxicated, although the witness could smell liquor on him; that, when appellant left, the witness followed him in his truck, and when he caught up with appellant, he asked him where he was going, to which appellant answered "down town," whereupon Mr. Woest asked him to jump in; that appellant got in the truck, and Mr. Woest then turned the truck around to go back to the scene of the alleged act, and appellant said that was not the direction he was going. Mr. Woest testified that he then drove to where he had first seen appellant, and stopped the truck, when appellant said, "What are you stopping here for"; that, after the truck stopped, appellant got out and ran in between some buildings by the Straus apartments; that the witness drove around the corner just as appellant came out of one of the apartment houses, and the witness jumped out of his truck and walked up to appellant; that by that time an officer had arrived.

Frank Pozarich, a police officer called by the state, testified that he received a call about eleven-forty-five on the morning of October 6th, to go to north Fourth avenue and pick up a man; that Mr. Alderson pointed out appellant to him, whereupon he arrested appellant and took him in; that appellant had been drinking, but was not in such a condition that he would have been picked up on the street as a drunk; that appellant walked all right and talked all right.

Ray Derby, another police officer, testified that he saw appellant when he was brought to the police station, and that, while he could smell liquor on him, appellant seemed to talk normally and walked all right; that he was not drunk.

James Carter was called by appellant, and testified that he had known appellant about four months; that appellant had a room at the Straus apartments; that he saw appellant between eleven and twelve o'clock, on October 6th, lying out in the road, drunk, and saw him a few minutes later when they took him to jail. While this witness testified he saw appellant lying in the street, he further stated that he passed by him and did not attempt to speak to him. He testified that he did not know that appellant was drunk, but that he had seen him drinking the night before and he thought he was drunk. This witness admitted that he had been twice convicted of crime, and, at the time of the trial, was in the county jail in the same tank with appellant.

Appellant took the stand and testified in his own behalf. His testimony was to the effect that he had taken care of children in the neighborhood many times, among them the little girl involved herein; that, at the time he was arrested, he did not know what he was arrested for. On cross-examination he testified that he had been drinking the morning of October 6th; that

no one forced him to drink; that he did not know when they picked him up and put him in jail. While appellant denied ever having molested this little girl, and denied that he had committed the act with which he was charged, his denial was qualified by other answers to the effect that, so far as he knew, he did not commit the act charged. Appellant was asked, among others, the following questions:

"Q. You can remember, then, you didn't do it? A. I just said I don't even remember when they put me in jail; didn't know anything that afternoon. Q. Is it possible that it could have happened and you not know it? A. Well, I don't know how I would answer that for I know that I've been places that they've—they've told me I've been places, when I was drinking, that I don't remember being. Q. Do you remember everything that happened on this particular day? A. No, I don't."

Appellant admitted that he had been convicted three or four times previous to the present charge, but for minor offenses.

There was no medical testimony introduced in this case, and there was no testimony tending to show any mental irresponsibility on the part of appellant other than as indicated herein. If any temporary mental irresponsibility was shown, in our opinion, it appears conclusively from the testimony that such mental condition was the result of voluntary intoxication.

The trial court originally gave instructions Nos. 5, 6, 7, 8, and 9. These instructions dealt with the question of voluntary intoxication and mental irresponsibility because of intoxication. After the jury had deliberated for some time, the court called them in and withdrew from their consideration the above mentioned instructions, and in their place gave the following:

"Gentlemen of the Jury, you are instructed that it is provided by a statute of this state that 'no condition of mind induced by the voluntary act of a person

charged with a crime shall be deemed mental irresponsibility.'

"The court further instructs you that because of such above quoted statutory provision, any temporary mental irresponsibililty which might have affected the defendant at the time of the alleged offense would not be an excuse or justification for the commission of such offense, if in fact it was committed.

"You are further instructed, therefore, that even though the defendant was in a condition of mental irresponsibility at the time of the commission of the alleged offense, such mental irresponsibility if resulting solely from a state of voluntary intoxication would not excuse the defendant, or in any way affect the question as to whether or not the alleged offense had or had not been committed.

"The court further instructs you that there has been no evidence introduced in this case tending to establish a condition of mental irresponsibility except that which would result from voluntary intoxication, and that therefore the defense of mental irresponsibility does not exist in this case.

"The court therefore withdraws from your consideration all of instructions numbers five, six, seven, eight and nine, and in lieu thereof the court is submitting to you instructions numbers 5 and 8 as follows:

"Instruction No. 5

"Under the laws of this state, voluntary intoxication existing at the time of the commission of a crime is not a defense to a charge of crime. Therefore, if you find from the evidence that the defendant at the time the crime is alleged to have been committed was voluntarily intoxicated, the fact of such intoxication would not excuse him from any acts which he may have done.

"Instruction No. 8

"You are instructed that if you find from the evidence, beyond a reasonable doubt, all of the following alleged facts, you will find the defendant guilty, that is to say:

"That the defendant, on or about October 6, 1941, within Yakima County, Washington, knowingly took indecent liberties with or on the person of . . . . , mentioned in the information, and that said . . . . was then a female under the age of fifteen years.

"But if, after a careful consideration of all the evidence, you have a reasonable doubt of any or all of the alleged facts just enumerated as necessary to find a verdict of guilty, you will find the defendant not guilty.

"You are further instructed that the several interrogatories heretofore submitted to you are now entirely withdrawn from your consideration and should be totally disregarded by you.

"You are further instructed that because of the alteration in the form of the instructions of the case, you should now determine whether or not the state has proved beyond a reasonable doubt that the defendant committed the offense charged in the information, without any question for your determination as to whether or not he was mentally responsible or irresponsible at the time of the commission of said alleged offense."

Instruction No. 5 as finally given was practically the same as instruction No. 5 withdrawn. Instructions Nos. 6, 7, 8, and 9 withdrawn presented to the jury for their consideration the question of mental irresponsibility of appellant.

Appellant contends that mental irresponsibility is a proper defense even though the irresponsibility originally stems from voluntary intoxication. Appellant admits that Rem. Rev. Stat., § 2258 [P. C. § 8693], eliminates ordinary intoxication as a defense to those crimes in which the element of intent is not a part, but contends that, when a condition of mental irresponsibility has been reached, in which the actor no longer can distinguish between right and wrong, even though originally induced by voluntary intoxication, such mental irresponsibility or insanity is a proper defense to a crime.

Rem. Rev. Stat., § 2173 [P. C. § 9293], provides:

"Any person who shall have committed a crime while insane, or in a condition of mental irresponsibility, and in whom such insanity or mental irresponsi-

bility continues to exist, shall be deemed criminally insane within the meaning of this act. *No condition of mind induced by the voluntary act of a person charged with a crime shall be deemed mental irresponsibility within the meaning of this act.*"   (Italics ours.)

Rem. Rev. Stat., § 2258, provides:

"No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular purpose, motive or intent is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent."

■   Motive or intent is not an element of the crime charged herein.

■   Appellant cites *State v. Craig,* 52 Wash. 66, 100 Pac. 167, and *State v. Schafer,* 156 Wash. 240, 286 Pac. 833, to sustain his contention.   In neither of the cases cited was it contended that a state of mind induced by voluntary intoxication constituted criminal insanity or mental irresponsibility, and we have been cited to no case, nor have we been able to find one, which holds that temporary mental irresponsibility resulting from voluntary intoxication is a defense to a crime.   We are in entire accord with what was said in the two cases cited, relative to the proper test of mental irresponsibility, but under our statute that test can only be applicable to those cases where the condition of the mind results from some cause other than that of voluntary intoxication.

In *State v. Beaman,* 143 Wash. 281, 255 Pac. 91, because of the type of crime charged (one involving intent), we recognized that it was proper for the jury to take into consideration the fact of intoxication in determining the purpose, motive, or intent, but we specifically stated that "the question of knowledge of

right or wrong is immaterial in cases of voluntary intoxication."

It seems to us that, to hold in this case that the claimed mental irresponsibility of appellant should have been submitted to the jury, we would have to completely ignore the provisions of § 2173, *supra,* and that to so hold would render that section meaningless. We are of the opinion that the great weight of authority sustains the conclusion reached by the trial court, with which we agree, that temporary mental irresponsibility induced by voluntary intoxication is no defense to crime.

In 15 Am. Jur. 27, § 338, we find the following statement:

"Voluntary intoxication does not excuse the commission of crime. A rule almost universally recognized and applied is that a person who, being sane and responsible for his acts, voluntarily becomes intoxicated, with or without a preconceived design to commit a crime, and while intoxicated, though it is to such a degree as to render him wholly oblivious to his acts or conduct, does any act which, if done by a person capable of distinguishing between right and wrong, would be criminal if not excused or justified in some way is responsible for his act, notwithstanding his mental condition at the time."

Many cases have been collected in the note to the above citation, and, also, in 12 A. L. R. 895, supplemented by 79 A. L. R. 906 *et seq.*

We shall refer to one outside case as typical, as this case not only sustains our conclusion, but we think makes a distinction between a case such as presented here and a case where the question of insanity should be submitted to the jury. In *State v. Kidwell,* 62 W. Va. 466, 59 S. E. 494, the court quoted from *State v. Robinson,* 20 W. Va. 713, 43 Am. Rep. 799, as follows:

" 'In general, insanity is an excuse for the commission of every crime because the party has not the possession of that reason which includes responsibility. An exception is when the crime is committed by a party while in a fit of intoxication, the law not permitting a man to avail himself of the excuse of his own gross vice and misconduct to shelter himself from the legal consequences of such crime.' "

The distinction is further brought out in the cited case by a quotation from *Beck v. State,* 76 Ga. 452, as follows:

" 'If the drunkenness produced a temporary frenzy, madness or unsoundness of mind in the accused, he would not be excused or held irresponsible for the act done by him while laboring under such temporary insanity, madness or unsoundness of mind thus produced, it being his own voluntary act. But if the mania, insanity or unsoundness of mind, though produced by drunkenness, be permanent and fixed, so as to destroy all knowledge of right and wrong, then the person thus laboring under these infirmities would not be responsible.' "

In the instant case, so far as this record shows, appellant was normal, or at least there was nothing to indicate he was insane or mentally irresponsible, before or after the date of the alleged act. If he was mentally irresponsible at the time of the act charged in the information, such condition of his mind was induced solely by voluntary intoxication. This being true, and the crime charged not involving the element of intent, appellant was not entitled to have submitted to the jury, for any purpose, the question of his claimed mental irresponsibility at the time of the alleged act.

We are of the opinion, therefore, that the trial court properly withdrew from the consideration of the jury instructions Nos. 5, 6, 7, 8, and 9, and that the instructions subsequently given, including instructions Nos.

5 and 8, were proper. It follows that the court properly denied the motion for a new trial.

Judgment affirmed.

ROBINSON, C. J., BEALS, BLAKE, and STEINERT, JJ., concur.