[No. 37130.   En Banc.   October 8, 1964.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL C. MAYS, *Appellant*.*

*Reported in 395 P. (2d) 758.

*Gavin, Robinson, Kendrick & Redman,* for appellant.

*Lincoln E. Shropshire, Wiley G. Hurst,* and *Walter B. Dauber,* for respondent.

HALE, J.—In the early hours of a wintry morning in downtown Yakima, Michael C. Mays fired three shots from a .38 caliber revolver into his former wife, Denise A. Mays, inflicting four wounds. She died from these wounds nearly 4 hours later, at about 5 a.m., February 2, 1963, in the hospital. Several years of marital discord followed by a divorce, months of bitter recrimination over the care and custody of Debbie, their minor daughter, and surveillance by the defendant of his former wife's comings and goings, all preceded the shooting. A few moments before the fatal fusillade, the defendant, Michael C. Mays, had accosted his wife and her escort as they were about to walk to a parked automobile. A minute or so after a brief but animated conversation, and as he stood only a few feet from her, defendant drew the revolver from his pocket and fired the deadly rounds.

No element of mystery cloaks the doing of the acts from which Denise Mays died; no doubt exists that Michael C. Mays held the gun that killed Denise Mays or that he fled from the scene of the killing in an automobile at high speed to his home where he made a telephone call just before the police arrived there; no one denied that the revolver was found under his bed. Testimony of a close-by eyewitness, coupled with the victim's dying declaration, added to a wealth of demonstrative evidence and the defendant's admission, establish beyond any doubt that the defendant committed the acts wherefrom Denise Mays died.

To the information charging murder in the first degree, appellant entered two pleas: Not guilty and not guilty by reason of mental irresponsibility, each of which was fully covered in the court's charge to the jury. From a judgment and sentence of life imprisonment entered on a verdict of murder in the second degree, and following denial of his motions for arrest of judgment or in the alternative for a new trial, appellant brings this appeal on five separate assignments of error:

"1. The Court erred in refusing appellant permission to recall Dr. Hood as a rebuttal witness.

"2. The court erred in permitting the prosecutor to call Phyllis C. Barnhart as a rebuttal witness.

"3. Misconduct of prosecuting attorney in his final argument which could not be cured at the time.

"4. The court erred by improperly commenting on the evidence.

"5. The court erred in instructing the jury upon the following presumptions: of second degree murder; that the defendant intended natural and probable consequences of his acts; and the presumption of mental responsibility."

Appellant describes his first assignment of error as a refusal to allow him to recall Dr. Hood, a psychiatrist, in rebuttal. We would not denominate the court's action as a refusal to hear the witness; rather, we note from the record that the trial court declined to grant a continuance or allow a substantial interruption in the trial while appellant searched for and returned Dr. Hood to the stand. The wit-

ness, a specialist in psychiatry, when earlier called by the appellant, testified at length as to appellant's personality, described appellant's responses to psychological testing, and explained his observations derived from psychiatric examinations. He related appellant's personal history and gave his opinion as to appellant's emotional and mental condition.

In rebuttal, the state called Dr. Berg, likewise a psychiatrist, who based his opinion neither on a personal examination nor on testing of the appellant, but relied exclusively upon his observations of the appellant's demeanor, conduct and testimony during the trial, and the testimony given by Dr. Hood—including a detailed hypothetical question put to Dr. Hood by Mr. Gavin, appellant's counsel. Dr. Berg told the jury that, in his opinion, appellant had no disease of the mind nor was he laboring under such a defect of reasoning as to not know the nature of the act he was doing; and that appellant did know the difference between right and wrong. In his opinion, appellant had no symptom of brain damage. Dr. Berg completed this rebuttal testimony on direct examination shortly before court recessed for the day, Wednesday, May 22, 1963. Early in the afternoon of the next day, Thursday, May 23rd, appellant requested the court to grant a postponement to enable him to recall Dr. Hood. He offered to prove that Dr. Hood would give an opinion that Dr. Berg could not conclusively rule out brain damage or mental disease in appellant merely from observing appellant in the courtroom, hearing the questions and listening to the testimony.

We see many reasons why the trial court properly refused the recess or postponement to allow time to locate Dr. Hood. First, the granting or denial of a continuance, a recess, or a postponement rests in the sound discretion of the trial court, and error cannot be predicated thereon unless the trial court clearly abuses its discretion. Second, appellant had ample time to arrange for Dr. Hood's return to the witness stand between the Wednesday afternoon adjournment when Dr. Berg had completed his direct examination and appellant's offer of proof made the following afternoon. Third, the offer of proof promised no substan-

tive evidence in reply to Dr. Berg's opinion, but rather evidence of an impeaching nature—evidence tending to impeach Dr. Berg's ability to form sound medical conclusions. Fourth, appellant was not limited to Dr. Hood for his purpose. Any qualified expert in the field of psychiatry could have been called by appellant for this purpose on surrebuttal. We find no error in the trial court's refusal to postpone or interrupt the trial to allow further time for appellant to find and return Dr. Hood to the courtroom. Denying or admitting evidence in rebuttal—or, as in this case, surrebuttal—rests largely within the discretion of the trial court. *Roche Fruit Co. v. Northern Pac. R. Co.*, 184 Wash. 695, 52 P. (2d) 325; *Kelly v. Department of Labor & Industries*, 172 Wash. 525, 20 P. (2d) 1105. This same discretion lies with the trial court when it comes to granting or denying a recess, postponement or continuance. In either instance, abuse of discretion must necessarily be shown as a prelude to disturbing the trial court's order. *State v. Williford*, 64 Wn. (2d) 787, 394 P. (2d) 371; *State v. Thompson*, 59 Wn. (2d) 837, 370 P. (2d) 964; *State v. Smith*, 56 Wn. (2d) 368, 353 P. (2d) 155; *State v. Hartwig*, 36 Wn. (2d) 598, 219 P. (2d) 564; *State v. Comer*, 176 Wash. 257, 28 P. (2d) 1027.

Appellant directs his second assignment of error to other rebuttal evidence offered by the state. On direct examination, appellant testified that he had never threatened to kill Denise Mays. Appellant also submitted extensive evidence as to his mental and emotional condition covering a period of years before the shooting. As a part of its case in rebuttal, the state called Phylis C. Barnhart who, describing a conversation with appellant, testified, over strenuous objection, that in either July or August, 1961, "He said that he would never let another man have Denise, and before he would ever let another man be a father to Debbie he would drive them, all three, over a cliff."

We agree with appellant that, if this testimony were offered solely to impeach appellant's statement that he had never threatened his former wife, the objection was well taken that no proper foundation for such impeachment

had been laid. Time-honored rules of evidence would have required the state to ask—as a proper predicate to impeachment—whether he had ever made such statements to Mrs. Barnhart and to fix the time, place and circumstances thereof as nearly as possible. Only in case of a denial would exclusively impeaching testimony be allowed. But here the impeachment seems merely incidental to the main purpose—incidental to proof of the appellant's mental condition during a relevant period before the acts charged and made relevant by the comprehensive evidence submitted by appellant concerning his life history.

Insanity and mental irresponsibility are in essence affirmative defenses which, when interposed as pleas to a criminal charge, place the burden of proof by a preponderance of the evidence upon the defendant. He has wide latitude in proving mental irresponsibility and may show his conduct, acts, and condition before and for a relevant period after the event charged. But the rule which allows this latitude to the accused grants similar latitude to the state in reply, for if the acts described do not indicate insanity, they may well show sanity. 2 Wigmore on Evidence (3d ed.) § 228; *State v. Collins,* 50 Wn. (2d) 740, 314 P. (2d) 660; *State v. Odell,* 38 Wn. (2d) 4, 227 P. (2d) 710. The trial court properly allowed evidence of threats against the deceased on rebuttal in answer to appellant's proof of mental irresponsibility; that this evidence also tended to impeach the appellant's earlier testimony does not supply grounds for its exclusion. The second assignment of error, we conclude, points to no error in the trial.

As to the third assignment of error, we find ample evidence in the record to support respondent's argument to the jury concerning the interval between the shots and the position of Denise Mays' body when one or more of the shots took effect. One may make reasonable inferences and deductions from the facts in giving his summation of the evidence to the jury. The remarks of the prosecuting attorney, based as they were upon the evidence, were within the realm of fair comment and, hence, not error. *State v. Griffith,* 52 Wn. (2d) 721, 328 P. (2d) 897; *State v. Stratton,*

170 Wash. 666, 17 P. (2d) 621; *State v. Stone,* 169 Wash. 233, 13 P. (2d) 427.

In his fourth and fifth assignments of error, appellant makes a searching study and analysis of several instructions. He directs the assignments to instruction 15, an instruction which says that one is held to intend the ordinary and usual consequences of his acts;[1] instruction 10, relating to the presumption that a felonious killing is second-degree murder with the burden on the state to raise it to first degree by proof beyond a reasonable doubt;[2] instruction No. 8, covering the problem of a lesser included offense and defining the elements of murder in the second degree;[3] instruction 19, on the presumption of sanity;[4] and instruction No. 22, which defines and prescribes the burden

---

[1]"The law presumes that every sane or mentally responsible person intends the natural, ordinary, and usual consequences of his own voluntary and intentional acts, and if the defendant is shown by the evidence beyond a reasonable doubt to have killed the deceased by an act, the natural and ordinary consequence of which would be to produce death, then it will be presumed that the death of the deceased was intended by the defendant unless the facts and circumstances of the killing, or the evidence, creates a reasonable doubt whether the killing was done purposely.

"On the other hand, proof or admission of the fact of killing, alone, does not raise any presumption of that premeditation or deliberation which is required to be proven beyond reasonable doubt in connection with a charge of first degree murder." Instruction 15.

[2]"When the felonious killing of a human being by another is proven beyond a reasonable doubt, the law presumes that such killing constitutes murder in the second degree. The burden is upon the state to raise the charge to murder in the first degree by proof beyond a reasonable doubt. The defendant bears the burden of justifying his act or reducing the charge to manslaughter by proof by a preponderance of the evidence." Instruction 10.

[3]"Included within the crime alleged in the Information is the lesser offense of Murder in the Second Degree. If you find the defendant is not guilty of the crime of Murder in the First Degree as alleged in the Information, you must then determine whether he is guilty of Murder in the Second Degree.

"To convict the defendant of the crime of Murder in the Second Degree, you must be convinced by legal and competent evidence beyond a reasonable doubt that:

"(1) That Denise Ann Mays was shot and killed on or about the 2nd day of February, 1963;

"(2) That she was shot and killed in Yakima County, Washington;

"(3) That the shooting was done wilfully, intentionally, feloniously and with malice by Michael C. Mays.

of proof as to mental irresponsibility.[5] Appellant contends that these five instructions constitute a comment upon the evidence by asserting a fact through declaring a presumption (instructions 15 and 19), inferring the fact of second-degree murder (instructions 10 and 8), and, if we understand the claimed error in instruction 22, that it too constitutes a gratuitous comment upon the evidence to the effect that, even though sick in mind and body, the defendant could be held responsible for the crime.

The fourth and fifth assignments of error, overlapping each other in some degree, will be regarded in pari materia and discussed together. In doing so, we should make it clear that no case from this jurisdiction has been brought to our attention which rejects or casts serious doubt upon the propriety of any of the instructions here under attack. In none of the cases cited to support appellant's claim of error do we find these particular instructions in issue or even a peripheral suggestion that these instructions are suspect. Rather, it seems that appellant would have us take

---

"(4) That the killing was committed with a design by the defendant to effect the death of the person killed but without premeditation." Instruction 8.

[4]"Every man is presumed to be mentally responsible and to intend the natural and usual consequences of his own acts. As the law presumes a man to be mentally responsible until the contrary is shown, I instruct you that the burden of proof of mental irresponsibility as a defense to a crime is upon the defendant to establish by a preponderance of the evidence, as that term is defined in these instructions, and unless mental irresponsibility is established by a fair preponderance of the evidence, the presumption of mental responsibility must prevail." Instruction 19.

[5]"You are instructed that it is not enough that the Defendant show merely that he was mentally unbalanced at the time of the commission of the offense charged, but he must prove by a preponderance of the evidence that he was laboring under such a defect of reason which would constitute mental irresponsibility as defined in the prior instruction.

"A person may be sick in mind or body and yet be mentally responsible as defined in the prior instruction.

"A frenzy arising solely from the passion of anger or jealousy which does not meet the test of mental irresponsibility as defined by the court will not excuse the crime charged, on the basis of mental irresponsibility." Instruction 22.

a new look at these instructions and regard them de novo as though they were offered in a murder trial for the first time.

No rule, precept, doctrine or concept of law is so firmly established, or comes from so eminent an authority, that it shall be deemed forever free from re-examination, analysis and challenge. Unlike the Decalogue, neither common law nor statute is said to be carved in granite, and the courts may study anew any rule or principle from time to time no matter how time honored it may be. But the constant reapplication of a rule and its repeated employment strongly suggests that it has been so re-examined and studied, and each time found suitable by a tribunal which itself is subject to inevitable change through the passing of time. Thus, when the court in *State v. Collins,* 50 Wn. (2d) 740, 314 P. (2d) 660, approved an instruction practically identical to instruction 15 here, it did so knowing that our legal system depends upon the idea of personal responsibility, and that the law must hold a person to have intended the usual and ordinary consequences of his acts. Our re-examination of instruction No. 15 makes us conclude again that it was not error to give it.

We make the same observation as to instruction No. 10, finding it to have been re-examined and approved by us in *State v. Moore,* 61 Wn. (2d) 165, 377 P. (2d) 456. Nor can we find error in instruction No. 8, in which the trial court defined murder in the second degree by breaking it into its component elements, and showing it to be an offense lesser in nature but included in the crime of first degree and requiring proof beyond a reasonable doubt on each element. We cannot see how, when instruction No. 10 is read with all of the other instructions given, it can be said to be a comment on the evidence or leave an inference with the jury that the trial court believed the defendant guilty of second-degree murder.

Instruction 22, as challenged by the appellant, simply reflects this court's adherence to the M'Naghten rule where insanity or mental irresponsibility are pleaded in defense, and we do not regard it as error. *In re White v. Rhay,* 64 Wn. (2d) 15, 390 P. (2d) 535; *State v. Collins, supra.*

Our final observations have to do with the points raised by appellant's fifth assignment of error which go specifically to the use of the word *presumption,* or words of the same import, as in instruction 10 where it is said that "When the felonious killing of a human being by another is proven beyond a reasonable doubt, the law *presumes* that such killing constitutes murder in the second degree . . ."; and in instruction No. 15 that "The law *presumes* that every sane person . . . intends the natural, ordinary, and usual consequences of his . . . intentional acts," and, again, as in instruction 19, that "Every man is *presumed* to be mentally responsible and to intend the natural and usual consequences of his own acts." (Italics ours.) Appellant says that this language creates legal presumptions as to facts which the defendant must produce evidence to rebut, and shifts burdens upon one accused of crime that he ought not be obliged to bear under our law. The only presumption validly presented in a criminal case, says appellant, is the presumption of innocence, which loses its force when given in connection with the instructions herein referred to.

We do not see how any of the instructions alluded to create any presumption of fact that impairs, curtails or infringes the presumption of innocence. The presumption that a felonious homicide shall be deemed murder in the second degree and placing the burden on the state to raise it to first degree and on the defendant to lower it to manslaughter has been the rule in this jurisdiction, continuously and without serious question, since *State v. Payne,* 10 Wash. 545, 39 Pac. 157 (1895), and affirmed in an unbroken line of precedents, including *State v. Thomas,* 63 Wn. (2d) 59, 385 P. (2d) 532; *State v. Moore,* 61 Wn. (2d) 165, 377 P. (2d) 456; *State v. Turpin,* 158 Wash. 103, 290 Pac. 824; *State v. Gruber,* 150 Wash. 66, 272 Pac. 89; *State v. Cook,* 126 Wash. 81, 217 Pac. 42; *State v. Duncan,* 101 Wash. 542, 172 Pac. 915; *State v. Totten,* 67 Wash. 192, 121 Pac. 70; *State v. Clark,* 58 Wash. 128, 107 Pac. 1047; *State v. Melvern,* 32 Wash. 7, 72 Pac. 489. This leaves for final comment instructions 15 and 19.

When we say that the law *presumes* that every sane person intends the natural, ordinary and usual consequences of his acts, as set forth in instruction 15, it is but another way of asserting that the law so deems it; and it is one way of declaring the rule of personal responsibility by which all members of a civilized society must be bound. The same reason supports instruction 19 in which it is said that every man is *presumed* to be mentally responsible or sane until the contrary is shown by a preponderance of the evidence. Here, too, the use of the word *presumed* is simply one way of saying that one is deemed or held in law to be sane until by a preponderance of the evidence mental irresponsibility is shown. Neither instruction, when considered in pari materia with the court's whole charge to the jury, in any way trespasses upon, curtails or impairs the presumption of innocence nor, as we see it, does either instruction assert a fact requiring evidence to overcome. Both instructions declare the principles of law appropriate to the issues raised by the information and the pleas of not guilty and not guilty by reason of mental irresponsibility. That this court has upheld instructions such as 15 and 19 in trials involving charges of murder in the first or second degree and in other types of crimes is seen in *State v. Collins, supra; State v. Myers,* 53 Wn. (2d) 446, 334 P. (2d) 536; *State v. Putzell,* 40 Wn. (2d) 174, 242 P. (2d) 180; *State v. Hartley,* 25 Wn. (2d) 211, 170 P. (2d) 333; *State v. Schafer,* 156 Wash. 240, 286 Pac. 833; *State v. Harris,* 74 Wash. 60, 132 Pac. 735; and *State v. Clark,* 34 Wash. 485, 76 Pac. 98.

All instructions having been repeatedly approved by this court, we find their employment to be without error in the trial of the cause.

Judgment affirmed.

OTT, C. J., HILL, FINLEY, WEAVER, ROSELLINI, HUNTER, and HAMILTON, JJ., and CUSHING, J. Pro Tem., concur.

January 5, 1965. Petition for rehearing denied.