[No. 1178-2.   Division Two.   July 22, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. EMANUEL BRANTLEY, *Appellant*.

*H. Edward Haarmann* and *Peterson & Haarmann,* for appellant.

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

PEARSON, C.J.—Defendant, Emanuel Brantley, appeals from a conviction for the crime of second-degree murder. He assigns error to the giving of an instruction concerning the legal effect of voluntary intoxication.

The circumstances of the homicide are as follows. On the morning of April 7, 1973, the defendant accompanied by two friends went to the McChord Air Force Base NCO Club. He and his companions had several drinks there, the defendant drinking 3 doubles of Scotch and milk. At approximately 12:30 p.m., one of the group purchased a fifth of whiskey and the three proceeded to the home of the purchaser. There the men consumed three-fourths of the bottle, most of that by the defendant and one other. The defendant explained that while he ordinarily never left a "whiskey setting" until the bottle went dry, he asked to be taken home at that point, to rest and get something to eat.

When he arrived at his home at approximately 3 p.m., defendant undressed, put on his pajamas, took one tablet of Valium (a tranquilizer) and one of Darvon. He then went into the living room and lay down. He asked his young daughter to bring him his revolver, which she did.

Shortly thereafter, Clarence King, the decedent, arrived at the defendant's residence to repay a small debt and reclaim a heater given as collateral. While the testimony at trial indicated that King and the defendant were friends, there was a certain amount of recent animosity between them as a result of personal incidents arising from the defendant's earlier suspicions that King had instigated a complaint against him with the Humane Society, concerning the defendant's care of certain pets.

A discussion between King and the defendant about this incident ensued. The defendant was described by witnesses

as "real drunk" and "hysterical." The defendant fired a shot over King's head, into the living room ceiling. The discussion continued in the kitchen, and the defendant there shot King, who fell dead. The defendant thereupon attempted mouth-to-mouth resuscitation.

At trial, the defendant claimed that he had no real memory of the above events, from the time he lay down in the living room, until he saw King slump to the floor in the kitchen. A breathalyzer test, administered to him within a few hours after the shooting, indicated a .26 percent alcohol blood level. A toxicologist, testifying for the defense, expressed the opinion that this figure indicated a .26 to .29 percent level at the time of the killing—evidence of a significant degree of intoxication.

In support of a special plea of not guilty by reason of mental irresponsibility, the defendant offered psychiatric testimony to the effect that he did not appreciate the moral quality of the act at the time he committed it. On cross-examination, the expert conceded that defendant was not and had not been psychotic, and that his state of mental irresponsibility may have been the product of his voluntary intoxication.

The defendant's two theories of defense accordingly were: (1) diminished capacity obviating specific intent to kill, as a result of voluntary intoxication (thus mitigating second-degree murder to manslaughter), and (2) insanity as a complete excuse to the commission of the crime.

The following instruction was given by the trial court on the subject of diminished capacity:

> No act committed by a person while in a state of voluntary intoxication, whether produced by liquor or by drugs, shall be deemed less criminal by reason of his condition, but whenever the existence of any particular purpose, motive or intent is a necessary element to constitute a particular kind or degree of crime, the fact of his intoxication may be taken into consideration in determining such purpose, motive or intent.

(Instruction No. 18.)

Instruction No. 19, setting forth the elements of the defense of insanity, was given as proposed by the defendant. The defendant's sole argument for reversal rests upon a giving of instruction No. 20, proposed by the State, as follows:

In general, insanity is an excuse for the commission of every crime because the party has not the possession of that reason which includes responsibility. An exception is when the crime is committed by a party while in a fit of voluntary intoxication, the law not permitting a man to avail himself of the excuse of his own vice and misconduct to shelter himself from the legal consequences of such crime.

On appeal, defendant contends that instruction No. 20 is inconsistent with instruction No. 18, and accordingly deprived him of the opportunity to present his theory of diminished capacity to the jury. He bases this argument on the language of instruction No. 20, to the effect that the law does not permit a man to avail himself of the excuse of his own "vice and misconduct" to shelter himself from the consequences of his crime. He argues that this language negates the impact of instruction No. 18, which advises the jury that they may take voluntary intoxication into consideration in determining the existence or absence of the element of specific intent to kill in the crime of second-degree murder.

This position is not well taken. Defendant lifts the controversial language out of the context of the instruction in which it is contained, as well as out of the context of the instructions taken as a whole. Instruction No. 20 purports only to advise the jury that whereas insanity, as defined in the preceding instruction, is a complete defense to *every* crime, an *exception* is where it is a result of voluntary intoxication. It is clearly the law, and defendant does not contend otherwise, that mental irresponsibility induced by voluntary intoxication does not raise the defense of insanity. *See State v. Huey*, 14 Wn.2d 387, 128 P.2d 314 (1942); *State v. Tyler*, 77 Wn.2d 726, 466 P.2d 120 (1970); RCW

10.76.010. Thus, in view of the evidence in this case, which strongly indicated that any "insanity" which existed was induced by the defendant's voluntary acts, the State was entitled to an instruction which informed the jury that such a complete defense would not apply if it so found. While the trial court may well have been justified in withdrawing the defense of insanity from the jury under the facts of this case (*see State v. Huey, supra* and *State v. Tyler, supra*), it was the defendant who requested (and received) the instruction. Accordingly the State was entitled to a proper qualification.

Moreover, the defendant failed to except adequately to the giving of the instruction at trial. The question of inconsistency urged here was not raised below, but rather the defendant at that time put forward the sole objection that instruction No. 20 had the practical effect of taking the defense of insanity out of the case. Presumably for the reasons alluded to above, this position is not urged as error on appeal.

■ Absent obvious or manifest injustice, we will not review an assignment of error based upon the giving of an instruction to which no exception was made sufficient to apprise the trial court of the asserted error. *State v. Robinson*, 78 Wn.2d 479, 475 P.2d 560 (1970); *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966).

■ As we have observed, an instruction on the question of voluntary intoxication relating to the defense of mental irresponsibility was appropriate under the circumstances of this case. The one given, when taken together with the instructions as a whole, as required (*see State v. Floyd*, 11 Wn. App. 1, 521 P.2d 1187 (1974)) is an essentially correct, albeit archaically worded,[1] statement. *See State v. Huey*,

[1]The language of instruction No. 20 was taken from a quotation in *State v. Huey*, 14 Wn.2d 387, 128 P.2d 314 (1942) at page 396, and, the State advises us, has a "long and distinguished history." It is an example of what has often been observed by our appellate courts, that language from appellate cases is not necessarily suited to jury instructions. *See State v. Alexander*, 7 Wn. App. 329, 499 P.2d 263 (1972).

*supra.* In any event, its defects of wording we do not think resulted in such obvious and manifest injustice that we will review them in the face of inadequate exception.

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied August 29, 1974.

Review denied by Supreme Court November 19, 1974.