[No. 944-3. Division Three. May 25, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. CLYDE GUS COLWASH, *Appellant.*

*Jim Gavin* and *Gavin, Robinson, Kendrick, Redman & Mays*, for appellant (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney*, for respondent.

GREEN, J.—Defendant appeals from a judgment and sentence entered upon his conviction of murder in the second degree.

Error is assigned to the court's: (1) denial of defendant's motion to dismiss for want of jurisdiction; (2) giving and

refusing to give certain instructions, particularly those relating to manslaughter and intoxication; (3) admission of photographs depicting the scene of the crime; (4) ordering defendant to submit to a blood test and admitting the results thereof; and (5) submission of a special verdict as to whether defendant was armed with a deadly weapon at the time of the crime.

With respect to the jurisdictional challenge, the facts show that defendant is a full-blooded, enrolled member of the Yakima Indian Nation (as was the deceased), and that the crime occurred within the exterior boundaries of the Yakima Indian Reservation on deeded land occupied by the Wapato Hotel. Defendant concedes that RCW 37.12.010, *Tonasket v. State,* 84 Wn.2d 164, 525 P.2d 744 (1974), and *Comenout v. Burdman,* 84 Wn.2d 192, 525 P.2d 217 (1974) support the trial court's denial of his motion to dismiss for want of jurisdiction. However, defendant argues that these cases were wrongly decided and should be reconsidered. Such a request should be addressed to the Supreme Court, inasmuch as this court, like the trial court, is bound by those decisions.

Next, defendant contends the court erred in refusing to give his proposed instructions relating to the lesser-included offense of manslaughter. The jury was instructed that the homicide was neither excusable (instruction No. 21) nor justifiable (instruction No. 20). They were further instructed that intoxication could be considered in determining the presence of intent (instruction No. 22);[1] or stated another way, intoxication could negative the intent to kill. Such intent is an essential element in first- or second-degree murder. Defendant asserts the court should have instructed on manslaughter because (1) there was sufficient evidence to support it; and (2) the jury could

---

[1]Error is not assigned to instructions Nos. 20 and 21 nor to the giving of an intoxication instruction. As to the latter, defendant believes the court should have given his proposed instruction rather than the one it gave. No error having been assigned to those instructions, they become the law of the case. *Brown v. Quick Mix Co.,* 75 Wn.2d 833, 836-37, 454 P.2d 205 (1969).

have found defendant was so intoxicated that he could not form the requisite intent to commit murder based upon the intoxication instruction. Had the jury found that the defendant was so intoxicated as to be incapable of forming the requisite intent, the killing would have been unintentional, *i.e.*, manslaughter. It is defendant's position that he was entitled to present this theory to the jury and that the refusal to give the manslaughter instruction deprived him of that right. Further, in light of the intoxication issue, there was evidence to support the instruction. Thus, defendant contends the court's refusal to instruct on manslaughter was error. We agree.

■ Manslaughter is defined in RCW 9.48.060:

Any homicide other than, murder in the first degree, or murder in the second degree, and not being excusable or justifiable is manslaughter.

From the evidence, it is clear that defendant killed the victim by stabbing him with a knife. Under the instructions and the evidence, this killing was not excusable or justifiable. The giving of an intoxication instruction created for the jury a question as to whether defendant possessed the requisite premeditation and/or intent to kill required for murder. Consequently, the evidence compelled a jury conclusion that either (1) the homicide was intentional, *i.e.*, murder in the first- or second-degree; or (2) unintentional, *i.e.*, manslaughter. Without the manslaughter instruction, the jury was required to either find the defendant guilty of one of the degrees of murder or acquit him. It is unrealistic to believe that a jury would acquit the defendant under the facts presented. The refusal to give the manslaughter instruction disarmed the defendant of the theory that if he was guilty of any crime it was manslaughter, an unintentional killing, by reason of his intoxicated condition. Thus, it was error not to instruct on manslaughter and we are constrained to reverse and grant a new trial.

The dissent agrees with this conclusion, but refuses to join in this reversal because, in its view, the exceptions taken at trial were inadequate to preserve the error. The

State does not challenge the adequacy of defendant's exceptions; whereas, singularly and on its own initiative, the dissent raises this question based on its assessment that to reverse a case on an error not articulated with unquestionable precision is unfair to the trial judge. As noted by the dissent, it is, of course, the well-established rule that a party must state the reasons for the exceptions to instructions, specifying the number, paragraph, and particular part in order to preserve the error. CrR 6.15(c);[2] *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975); *Kjellman v. Richards*, 82 Wn.2d 766, 514 P.2d 134 (1973). We find the exceptions adequate within CrR 6.15(c) to apprise the trial court of the issues involved.

Defendant sought an instruction to the effect that if the jury found defendant to be so intoxicated that he could not form a necessary intent, he must be acquitted. This instruction was refused by the trial court. Defendant further proposed an instruction on manslaughter to allow the jury to deliberate on whether a crime was committed and whether the crime was manslaughter. This instruction was also refused. Defendant then took exception to the failure to give an instruction relating to specific intent, stating that such was necessary in order for the defendant to present his theory of the case. Defendant further proposed instructions to the effect that if the jury could not find the necessary elements for first- or second-degree murder, then they must determine whether the defendant is guilty of manslaughter, the lesser-included offense. In light of the intoxication instruction that was given, defendant's exceptions, taken together, are adequate to apprise the trial court of the issues and to preserve the error. *Cf. State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

Because our holding will require a new trial, we will consider certain other errors assigned on this appeal that may arise again.

---

[2] CrR 6.15(c) in part states: "The party objecting [to an instruction] shall state the reasons for his objection, specifying the number, paragraph, and particular part of the instruction to be given or refused."

First, defendant assigns error to the giving of instruction No. 22 and the court's refusal to give his proposed instruction No. 33 relating to voluntary intoxication. We find no error. Instruction No. 22 is phrased in virtually the same language as the instructions considered and approved in *State v. Runnells*, 64 Wn.2d 995, 390 P.2d 1003 (1964), and *State v. Mello*, 79 Wn.2d 279, 484 P.2d 910 (1971).

■ Second, error is assigned to the giving of instruction No. 9:

When the felonious killing of a human being by another is proven beyond a reasonable doubt, the law presumes that such a killing constitutes Murder in the Second Degree. The burden is upon the state to raise the charge to Murder in the First Degree by proof beyond a reasonable doubt.

This instruction was approved in *State v. Payne*, 10 Wash. 545, 39 P. 157 (1895), and more recently in *State v. Thomas*, 63 Wn.2d 59, 63, 385 P.2d 532 (1963), and *State v. Mays*, 65 Wn.2d 58, 67, 395 P.2d 758 (1964). Defendant argues that these cases should be overruled. We are bound by these decisions and defendant's invitation is denied.

■ Third, the court did not err in the admission of two colored photographs, about 3 by 4 inches in size, showing the condition of the victim, his wounds, and the bed on which he lay at the time he was found. "The pictures were competent to show the nature of the wounds and exactly what was found at the time the officers commenced their investigation . . ." *State v. Hawkins*, 70 Wn.2d 697, 705, 425 P.2d 390 (1967). In *State v. Adams*, 76 Wn.2d 650, 658, 458 P.2d 558 (1969), the admission of photographs depicting the victim at the scene of the crime was affirmed, the court stating:

These photographs had clear probative value and were admissible under the rules stated above. They were used to prove relevant and material facts such as the scene of the crime and the physical facts of the case. The potential prejudicial effect of these photographs does not appear to be great and does not outweigh their probative value. The court did not abuse its discretion in admitting them into evidence.

Admission of photographs rests in the sound discretion of the trial court. We find no abuse of discretion in this case.

■ Fourth, the trial court did not err when it granted plaintiff's motion requiring him to submit to a blood test, nor later at trial when it permitted the Yakima County coroner to testify as to the results of the test. It is argued that the blood test constituted an unreasonable search and seizure and required defendant to be a witness against himself in violation of due process. We need not reach the merits of this contention as neither the blood test nor the testimony contributed to his conviction. The test only revealed that defendant's blood type was O, Rh-positive; we find no prejudice. Thus, the alleged error, if any, was harmless. Moreover, *Schmerber v. California*, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966), supports the propriety of the court's order and later admission of the testimony.

Finally, the defendant assigns error to the trial court's submission to the jury of a special verdict as to whether defendant was armed with a deadly weapon at the time of the crime. This special verdict was answered affirmatively and the court sentenced defendant to a maximum of 25 years. As a result, the Board of Prison Terms and Paroles fixed the maximum sentence at 25 years and ordered that defendant be incarcerated for "7½ yrs. mandatory under RCW 9.95.040(2)." The mandatory sentence was imposed pursuant to RCW 9.95.040, which provides in part:

> Within six months after the admission of a convicted person to the . . . state penal institution . . . the board of prison terms and paroles shall fix the duration of his confinement. . . .
>
> The following limitations are placed on the board of prison terms and paroles . . .
>
> . . .
>
> (2) For a person previously convicted of a felony either in this state or elsewhere and who was armed with a deadly weapon at the time of the commission of his offense, the duration of confinement shall not be fixed at less than seven and one-half years.

Defendant contends that the special verdict was improperly

submitted to the jury because the information did not allege or refer to the mandatory penalty and, therefore, the information failed to give him notice that upon conviction and a special deadly weapon finding, he would be required to serve a mandatory prison term. We disagree.

A charge of murder in the first degree is punishable by life imprisonment. RCW 9.48.030. RCW 9.95.115 permits the board to parole a prisoner serving

> a mandatory life sentence, who has been continuously confined . . . for a period of 20 consecutive years less earned good time . . .

and RCW 9.95.110:

> [I]n no case shall an inmate be credited [for earned good time] with more than one-third of his sentence as fixed by the board.

Therefore, "[a] mandatory sentence of life imprisonment is not a mandate of imprisonment for life." *State v. Collins*, 50 Wn.2d 740, 756, 314 P.2d 660 (1957). One convicted of the crime of first-degree murder is subject to a mandatory life sentence, and is required to serve 20 years less good time before being considered for parole.

■ Since the defendant was on notice of a mandatory life sentence greater than the 7½-year mandatory minimum required to be fixed by the Board of Prison Terms and Paroles, due process was satisfied and the submission of the special verdict was not error. *Cf. State v. Cosner*, 85 Wn.2d 45, 51, 530 P.2d 317 (1975).

However, because the defendant was acquitted of first-degree murder and we have granted a new trial, defendant will be tried on a charge not greater than murder in the second degree. Therefore, the information or charge should be amended by the State to conform strictly with the notice requirements of *State v. Cosner, supra* at 50, in which the court said:

> [D]ue process of law requires that the information contain specific allegations to that effect [that the act was committed with a deadly weapon and that the State seeks to rely on RCW 9.95.040], thus putting the accused

person upon notice that enhanced consequences will flow with a conviction.

*See also State v. Frazier*, 81 Wn.2d 628, 633-34, 503 P.2d 1073 (1972).

Reversed and remanded for new trial.

McINTURFF, C.J., concurs.

MUNSON, J. (dissenting)—The failure to give a manslaughter instruction was not error; the trial court was not "clearly apprised" of the theory adopted in the opinion reversing and remanding this case for new trial.

The logic of the majority as to the necessity of the manslaughter instruction where the evidence in a homicide case justifies a voluntary intoxication instruction is unimpeachable. One who is charged with murder and rests his defense upon voluntary intoxication, pursuant to RCW 9.01.114, may successfully convince the jury that he was so intoxicated that he was incapable of performing the specific intent to kill, but having admitted the killing, is guilty of manslaughter. *Cf. State v. Brantley*, 11 Wn. App. 716, 718, 525 P.2d 813 (1974).

If this was the defendant's theory at trial, it was presented very obliquely.[3] The exception taken to defendant's

---

[3]The defendant excepted to the giving of, and failure to give, certain instructions as follows. The intoxication instruction given:

Furthermore, the instruction is so confusing that it would appear to be almost impossible for the jury has never worked with an instruction like this to understand what it says.

I would cite in that regard State vs. Mellow, 79 Wash (2d) 279, and Edwards vs. United States, a Washington, D. C. opinion in the Federal courts, 172 Federal (2d) 884, and also R C W 9.01.114. The Edwards case states that if in fact there is evidence that a defendant is entitled to an intoxication instruction going to his intent or lack of intent, that the jury should be instructed that if he was intoxicated to such an extent that he could not form the necessary intent *they must acquit him.* In other words, telling the jury that it is a defense to the charge with a specific intent.

I believe that Defendant's Proposed Instruction No. 33 precisely states that.

(Italics mine.) In truth, that's exactly what defendant's proposed instruction No. 33 said in this last paragraph:

"If you find that the defendant Clyde Gus Colwash was intoxi-

proposed instruction No. 21, as noted in the footnote, is as close as the defendant comes to informing the trial court of this theory. In my opinion, none of the exceptions noted in footnote 3 comply with the requirement that the court be clearly apprised of the parties' reason for taking the exception. As stated in *Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976):

Exceptions to the failure of the trial court to give an

---

cated to such an extent that he could not form the necessary intent *you must acquit him."*

(Italics mine.) Further, in excepting to the court's instruction on intoxication, the defendant stated:

They are at liberty to either believe or disbelieve what I say to them as an attorney and it is not evidence what I say, and they are instructed on that, and when we argue this case if we tell them that this is a defense, *you have to acquit him* if he did not have the intent due to intoxication, they can say, "No, no, that's not what the instruction says." I think there is room for them to say that by reading this instruction, and this is prejudicial error.

(Italics mine.) In excepting to the failure to give defendant's proposed instruction No. 6 defining the various degrees of murder, the defendant stated:

"As far as material for your consideration, manslaughter is defined as follows:

"The killing of a human being which is not excusable or justifiable and which is not premeditated nor intentional is manslaughter."

We feel, Your Honor, that the court should have given an instruction allowing the jury to deliberate upon the issue of whether or not a crime was committed and whether or not this crime was manslaughter. The court has seen fit not to instruct upon manslaughter in any way whatsoever.

The defendant then went on to outline a set of facts reflecting the manner in which this crime could have occurred, concluding:

[A]nd it could be inferred from the evidence, the circumstantial evidence, that in fact the defendant did not intend to kill him but he drew this knife in such a way as to try to keep Danny Sampson from injuring him, that in fact it was an accidental and not an intentional killing.

In excepting to the failure to give defendant's proposed instruction No. 21 relating to specific intent, the defendant stated:

We feel that the Court should have given this instruction because it states there is a specific intent required, it is a specific intent crime, and specific intent must be found or the crime is not committed.

This goes along with our theory of the case as to intoxication and it is a part of our theory of the case and it also is the law of the State of Washington.

instruction must clearly apprise the trial judge of the points of law involved. Where the exception and the discussion of it does not do so, points of law or issues involved will not be considered on appeal.

*See also* CrR 6.15 (c) and *Haslund v. Seattle*, 86 Wn.2d 607, 614, 547 P.2d 1221 (1976).

During the process of any trial, counsel and the court are involved in a multitude of issues. If the defendant intended to argue the theory now expressed, he was obligated to alert the trial court of that theory. It is only by selecting particular words from the several exceptions (keeping in mind the theory now expressed) that it is even remotely possible to perceive that the trial court was advised of the theory which is now so clearly enunciated. The exceptions to the instructions do not provide a sufficient nexus connecting the issue of voluntary intoxication to manslaughter.

I understand the majority's opinion to be that the trial court should have recognized as a matter of law that by giving the intoxication instruction the manslaughter instruction must necessarily follow, in the absence of excusable or justifiable homicide. It is my belief that a party's theory is best known to that party; he should be more familiar with his case than the judge. It is his obligation to present his theory to the trial judge. The defendant failed to meet this obligation with sufficient clarity.

The majority notes the State's failure to challenge the adequacy of the defendant's exception and laments this dissent raising the clarity contention. However, if a trial court may be sustained upon any ground, it is our duty to affirm. *State v. Carroll*, 81 Wn.2d 95, 500 P.2d 115 (1972); *McDaniel v. McDaniel*, 14 Wn. App. 194, 539 P.2d 699 (1975); *State v. Broussard*, 12 Wn. App. 355, 529 P.2d 1128 (1974). This court should not be handcuffed by the State's omission of a contention in support of a judgment which is within the direct attack of the defendant.

I concur in the balance of the majority's opinion; however, I would affirm the conviction.

Petition for rehearing denied July 19, 1976.

Appealed to Supreme Court July 23, 1976.