57 Wn.2d 196 (1960)
356 P.2d 994
In the Matter of the Welfare of CLYDE (GUS) COLWASH.
THE STATE OF WASHINGTON, on the Relation of George C. Starlund et al., Plaintiff and Relator,
v.
THE SUPERIOR COURT FOR YAKIMA COUNTY, Lloyd L. Wiehl, Judge, Respondent.[1]
No. 35412.
The Supreme Court of Washington, En Banc.
October 20, 1960.
The Attorney General, Fred C. Dorsey and Jane Dowdle Smith, Assistants, for plaintiff and relator.
Ray E. Munson and Donald H. Brazier, Jr., for respondent.
James B. Hovis, amicus curiae.
HUNTER, J.
This is a review by certiorari of an order of the Juvenile Court for Yakima County dismissing a dependency petition on the ground that the court lacked jurisdiction over the minor child involved.
The minor, Clyde (Gus) Colwash, is an unemancipated enrolled member of the Yakima Indian tribe, who, at all times material to this review, resided upon the Yakima Indian Reservation. The child was abandoned by his parents. *197 On December 13, 1957, pursuant to a dependency petition, the court declared him a dependent child and directed that he be placed in the custody of the juvenile probation officer until the mother provided a proper home for him or until further order of the court. The child continued to be a ward of the court until November 27, 1959, when the court, on its own motion, entered an order of dismissal for lack of jurisdiction.
The sole question to be determined on this review is whether the Juvenile Court for Yakima County has jurisdiction over minor children who are enrolled members of an Indian tribe and residing on an Indian reservation.
It is respondent's position that the federal government has exclusive jurisdiction over Indians and Indian affairs, and that the states can only assume such jurisdiction as has been expressly surrendered by Congress. We agree. Our determination of this issue in the case of State ex rel. Adams v. Superior Court, ante p. 181, 356 P. (2d) 985, is controlling.
[1, 2] Respondent contends, however, that the juvenile court has jurisdiction over the minor child by reason of 25 U.S.C.A. § 231 (1959), which states:
"Enforcement of state laws affecting health and education; entry of state employees on Indian lands.
"The Secretary of the Interior, under such rules and regulations as he may prescribe, shall permit the agents and employees of any State to enter upon Indian tribal lands, reservations, or allotments therein (1) for the purpose of making inspection of health and educational conditions and enforcing sanitation and quarantine regulations or (2) to enforce the penalties of State compulsory school attendance laws against Indian children, and parents, or other persons in loco parentis except that this subparagraph (2) shall not apply to Indians of any tribe in which a duly constituted governing body exists until such body has adopted a resolution consenting to such application."
This same contention was raised in State ex rel. Adams, supra, as to subsection (1), § 231. There we said:
"The jurisdiction of the state to make inspection for health and educational conditions and enforcing sanitation and quarantine regulations clearly relates to the health and sanitation of a community and does not confer any jurisdiction *198 upon the juvenile court over individual children. Moreover, it is not within the province of the juvenile court to make inspections or to enforce general health and sanitation regulations."
In the Adams case, supra, subsection (2) was not considered because the confederated tribes of the Colville Indian Reservation had not adopted a resolution consenting to the application thereof.
In the instant case the application of the compulsory school attendance laws of the state of Washington has been approved by appropriate resolution of the Yakima tribal council and by the Secretary of the Interior:
"Whereas the Yakima Tribe is interested in improving the education and health of members of the Tribe:
"Now, THEREFORE BE IT RESOLVED by the Yakima Tribal Council in session this 8th day of April, 1953, at the Yakima Indian Agency, Toppenish, Washington, a quorum being present, that application of the public school and health laws be requested and authorized for the Yakima Indian Reservation in accordance with the provisions of the Act of August 9, 1946, (60 Stat. 962); PROVIDED, that this request and authorization shall apply only to education and health matters."
RCW 28.27.070, the compulsory school attendance law applicable to the juvenile court, provides inter alia:
"...
"In case of an habitual or incorrigible truant the arresting officer shall take him before a justice of the peace. The justice of the peace, if he is convinced that the child so arrested is an habitual truant or that the child is guilty of wilful and continued disobedience to the school rules and regulations or laws, or that the conduct of the child is pernicious and injurious to the school, shall bind the child over to the juvenile court with a view of his commitment as a juvenile delinquent."
Clearly, the Juvenile Court for Yakima County would have had jurisdiction over the minor child involved, had he been bound over by the justice court pursuant to the enforcement of our compulsory school attendance laws. However, the jurisdiction given the juvenile court by this enactment could not be invoked since there was no question of truancy *199 involved in this case.
There was therefore no basis upon which the juvenile court could have acquired jurisdiction of the minor child in the instant case, and the trial court correctly dismissed the order of dependency for lack of jurisdiction.
The order of dismissal is affirmed.
WEAVER, C.J., DONWORTH, ROSELLINI, OTT, and FOSTER, JJ., concur.
HILL, J. (dissenting)
I dissent. We are concerned with whether the Superior Court of Yakima County has jurisdiction over an Indian boy abandoned by his parents on the Yakima Indian Reservation. He is an unemancipated, enrolled member of the Yakima Indian tribe, and resided upon the reservation. "Abandoned," and not "Indian," is the key word in this dissent.
The superior court, pursuant to a dependancy petition, declared the boy a dependent child within the purview of our dependency statutes (RCW 13.04.010) December 13, 1957. For almost two years, until November 27, 1959, he continued to be a ward of the superior court. No Indian claimed jurisdiction for the tribal court; no federal officer claimed jurisdiction for any federal agency; but the superior court, on its own motion, entered an order of dismissal for lack of jurisdiction. (This action may have been prompted by our opinion in a series of Indian cases filed November 19, 1959  In re Wesley v. Schneckloth (1959), 55 Wn. (2d) 90, 346 P. (2d) 658, followed by four companion cases.)
That order is before us for review on a writ of certiorari.
The majority says the superior court had no jurisdiction to make the abandoned Indian child a ward of that court.
As pointed out in my dissent in State ex rel. Adams v. Superior Court (1960), ante p. 181, 356 P. (2d) 985, our federal government is a government of granted powers, and it is therefore necessary to find somewhere within the constitution the basis and the extent of the jurisdiction of the Congress over the affairs of enrolled Indians on Indian reservations.
I shall not repeat here what I there said concerning the *200 constitutional basis of that power, or the holding in Worcester v. Georgia (1832), 31 U.S. 515, 8 L.Ed. 483, where Chief Justice Marshall stated the source of that power in two sentences (p. 559):
"That instrument [the constitution] confers on congress the powers of war and peace; of making treaties, and of regulating commerce with foreign nations, and among the several states, and with the Indian tribes. These powers comprehend all that is required for the regulation of our intercourse with the Indians...."
That case was decided on the basis of the treaties with the Cherokees.
Nor will I repeat here a somewhat lengthy quotation from the concurring opinion of Mr. Justice McLean in that case, which appears in my dissent in the Adams case. He points out that for the benefit of the Indians there must be
"... a co-operation of the state and federal governments. The latter has the exclusive regulation of intercourse with the Indians; and so long as this power shall be exercised, it cannot be obstructed by the state...."
But he points out that where the power is not exercised "it would undoubtedly be in the power of a state government, to extend to them the aegis of its laws."
I would say here, as in the dissenting opinion in the Adams case, that in meeting the physical needs of this abandoned child the state
"... obstructs neither the Federal government nor the tribe. It acts in the vacuum created by their failure to act and extends to these children `the aegis of its laws.'"
Where is the treaty provision, or the act of the Congress, that says our courts have no jurisdiction to meet the needs of an abandoned Indian boy? No one points to any! As a matter of fact, there is no reference in the Treaty of 1855 to any court. The nearest approach is in the final sentence of Article 8, pertaining to depredations against non-Indians or other Indians, and it reads:
"And the said confederated tribes and bands of Indians agree not to shelter or conceal offenders against the laws of the United States, but to deliver them up to the authorities for trial."
*201 It should be noted that no tribal court was established until 1953. If the tribal court has jurisdiction in this case, where was the jurisdiction in the intervening ninety-eight years?
Let us look for a moment at the Law and Order Code of the Yakima tribe adopted ninety-eight years after the treaty was signed, January 15, 1953. It begins with the following prefatory statement:
"The following ordinances relating to the Yakima Tribal Court shall apply to the Yakima Indian reservation.
"It is the purpose of these ordinances to provide the machinery of law enforcement for the Indian tribes of the Yakima reservation for which no adequate enforcement agency has been provided under Federal or state law." (Italics mine.)
The state of Washington has the facilities, and its courts have jurisdiction to care for abandoned children. Were the Yakima tribe to come forward and say: this child is one of us and we want to take care of him; or if the federal government was to come forward and say: this child is a ward of the United States and it wants to take care of him  the child would no longer be abandoned and dependent. We are confronted with the matter of a child that is actually abandoned and clearly dependent. He is an Indian, but he is also a citizen of the United States (Act of June 2, 1924, 43 Stat. 253, 8 USCA, § 3 (now included in 8 USCA, § 1401)) and of the state of Washington; as such, he is entitled to protection.
The case of Williams v. Lee (1959), 358 U.S. 217, 3 L.Ed. (2d) 251, 79 S.Ct. 269, relied on by the majority and which is the basis of the decision in Whyte v. District Court of Montezuma County (1959), 140 Colo. 334, 346 P. (2d) 1012, should be distinguished.
The plaintiff, who was not an Indian, operated a general store on the Navajo Indian Reservation under a license required by the federal statute (25 USC § 262). The decision that the tribal court, and not the courts of the state of Arizona, had jurisdiction of his action (on an open account against an Indian living on the reservation) was based upon *202 the treaty with Navajos made in 1868. The court said (p. 221),
"... Implicit in these treaty terms, as it was in the treaties with the Cherokees involved in Worcester v. Georgia was the understanding that the internal affairs of the Indians remained exclusively within the jurisdiction of whatever tribal government existed. Since then, Congress and the Bureau of Indian Affairs have assisted in strengthening the Navajo tribal government and its courts. See the Navajo-Hopi Rehabilitation Act of 1950, § 6, 64 Stat. 46, 25 U.S.C. § 636; 25 CFR §§ 11.1 through 11.87NH. The Tribe itself has in recent years greatly improved its legal system through increased expenditures and better-trained personnel. Today the Navajo Courts of Indian Offenses exercise broad criminal and civil jurisdiction which covers suits by outsiders against Indian defendants...."
Justice Black's opinion must be interpreted within the framework of the factual situation before the court.
We are concerned with an entirely different treaty, and with an entirely different type of reservation. On the Yakima Indian Reservation the Caucasians greatly outnumber the Indians; no such license is required by the many stores operating in the cities on that reservation. The Navajo-Hopi Rehabilitation Act of 1950, § 6, 64 Stat. 46, 25 U.S.C. § 636, specifically provided for the adoption of a constitution by the Navajo (but not the Hopi), and, as indicated by Justice Black, the Navajos organized a tribal government having powers as granted by its constitution, including judicial powers. There is no such act for the Yakima tribe, although they might have chosen to organize under the Wheeler-Howard Act, passed June 18, 1934 (25 USCA 476, 477), but they have not done so. Consequently, the Navajos  by virtue of the acceptance of a specific grant by the Congress of authority  have an organized government whose courts exercise broad criminal and civil jurisdiction.
This is not the present case. We are referred to no "limiting treaty obligation" and to no "Congressional enactment," which hinders or prevents the superior courts of the state of Washington from extending to Indian children who are abandoned the same consideration that it would give to the *203 other children of the state under like circumstances.
I would reverse the trial court and remand with instructions to continue Clyde (Gus) Colwash as a ward of the juvenile court, and to extend to him such care as his condition warrants.
MALLERY and FINLEY, JJ., concur with HILL, J.
NOTES
[1] Reported in 356 P. (2d) 994.