[No. 42976.   En Banc.   August 8, 1974.]

DOLLIETTA COMENOUT et al., Petitioners, v. MILTON BURDMAN, as Secretary of the Department of Social and Health Services, et al., Respondents.

*Allen H. Sanders* of *Legal Services Center* (Seattle) and *Michael Taylor,* for petitioners.

*Slade Gorton, Attorney General,* and *William H. Clarke* and *Luzerne E. Hufford, Jr., Assistants,* for respondent Burdman.

*L. Edward Brown, Prosecuting Attorney,* and *Greg Staeheli, Deputy,* for respondent Poyhonen.

HUNTER, J.—This appeal arises from a writ of prohibition brought by the petitioners (appellants), Dollietta and Kenneth Comenout, against the respondents, Milton Burdman, as Secretary of the Department of Social and Health Services, and Judge Warner Poyhonen, Judge Pro Tem of the Superior Court for Grays Harbor County. The case deals with the issue of whether the State of Washington has jurisdiction to deprive the petitioners of their parental rights over their children where the petitioners are Quinault Indians residing on the Quinault Indian Reservation.

The facts in the instant case are as follows. The petitioners, Quinault Indians residing on the Quinault Indian Reservation, are the parents of Annabella Comenout, born May 22, 1967, and Sonja Comenout, born May 15, 1970. In March of 1969, Annabella Comenout was taken from the custody of her parents by the state Department of Social and Health Services and, in March of 1971, at a hearing before the Superior Court for Grays Harbor County, the petitioners were temporarily deprived of the custody of both their children for a period of 6 months. Both children have been placed in foster care by the state Department of Social and Health Services.

On August 6, 1973, a hearing was held before Judge Warner Poyhonen, Judge Pro Tem of the Superior Court for Grays Harbor County, on a petition for permanent deprivation of the parental rights of the petitioners over their

children. The petitioners moved to dismiss the action on several grounds, arguing that the State of Washington had no jurisdiction to deprive them of their parental rights in this matter since they were Quinault Indians residing on the Quinault Indian Reservation. At that hearing Judge Poyhonen issued an oral order denying the petitioners' motion to dismiss, and entered a written order on August 15, 1973, continuing for 6 months the temporary deprivation order already in existence. Meanwhile, the petitioners filed a petition for writ of prohibition in Division Two of the Court of Appeals against the respondents, and we accepted jurisdiction in the matter to consider the issues involved.

The petitioners' contention in this case, that the State of Washington has no jurisdiction over Quinault Indians and the Quinault Indian Reservation, must be considered in light of various constitutional provisions, statutory enactments, and events leading up to this controversy. In 1889, the United States Congress adopted an act allowing the territories of Washington, Montana, North Dakota and South Dakota to become members of our union of states. Act of February 22, 1889, ch. 180, § 1, 25 Stat. 676. The enabling act provided as a prerequisite to admission to the Union that each state seeking admission should hold a constitutional convention and provide, among other things:

[B]y ordinances irrevocable without the consent of the United States and the *people of said States*:
. . .

Second. *That the people inhabiting said proposed States do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof,* and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, *and said Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States;* . . .

(Italics ours.) 25 Stat. 676, 677.

In compliance with the enabling act language, article 26

of the Washington State Constitution provided a disclaimer of jurisdiction as follows:

> The following ordinance shall be irrevocable without the consent of the United States and *the people of this state*:
>
> . . .
>
> Second. *That the people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries of this state, and to all lands lying within said limits owned or held by any Indian or Indian tribes*; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, *and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States* . . .

(Italics ours.)

The Act of August 15, 1953, ch. 505, 67 Stat. 588, was passed by Congress, consenting to the assumption of jurisdiction over Indians by the states. The relevant sections of this act provided on page 590:

> Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: *Provided,* That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.
>
> Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.[1]

---

[1] Section 7 of the Act of August 15, 1953, ch. 505, 67 Stat. 588, has been repealed by the enactment of Act of April 11, 1968, Pub. L. No.

Responding to that congressional action, the legislature of the State of Washington enacted Laws of 1957, ch. 240 (RCW 37.12), which provides that the State of Washington shall not assume jurisdiction over an Indian tribe until such tribe expresses a desire for its people to be subject to the jurisdiction of the State of Washington. A particular procedure was specified in RCW 37.12.020,[2] in which it was provided that whenever the Governor of the State shall receive from the tribal council or other governing body of the Indian tribe, a resolution expressing its desire to be subject to the *criminal and civil jurisdiction* of the state, the Governor shall issue a proclamation to the effect that the State of Washington assumes jurisdiction over the petitioning tribe.

On April 22, 1958, a body purporting to be the "Quinault Indian Tribal Council" adopted a resolution expressing the desire that the criminal and civil jurisdiction of the State of Washington be extended to include the Quinault Indian Tribe and Reservation. Pursuant to RCW 37.12.020, former Governor Rosellini, on May 15, 1958, issued a proclamation purporting to extend state jurisdiction over *criminal and civil* matters to that reservation effective July 14, 1958. The proclamation declared that

> The criminal and civil jurisdiction of the State of Washington shall apply to the Quinault Indian people, their reservation, territory, lands and country, and all persons being and residing therein.

After the proclamation was issued, however, certain mem-

---

90-284, 82 Stat. 79, which provides, *among other things, that states acquiring jurisdiction over Indian tribes and reservations with respect to criminal offenses or civil causes of action must first obtain the consent of the affected tribe by a majority vote of the adult Indians voting at a special election held for that purpose. 25 U.S.C. § 1326 (1968). Moreover, 25 U.S.C. § 1323(b) (1968) specifically provides that the repeal of Section 7 of the Act of August 15, 1953, supra, does not affect any cession of jurisdiction made pursuant to such section prior to its repeal.*

[2]RCW 37.12.020 was repealed in 1963 and superseded by the enactment of Laws of 1963, ch. 36, § 5 (now codified as RCW 37.12.021).

bers of the Quinault Indian Tribe repudiated the initial resolution submitted by the tribe on April 22, 1958. The proclamation by former Governor Rosellini was not rescinded before the effective date, however, and the validity of the proclamation was upheld in *State v. Bertrand,* 61 Wn.2d 333, 378 P.2d 427 (1963).

In 1963, the legislature of the State of Washington enacted Laws of 1963, ch. 36, p. 346, which substantially amended RCW 37.12. RCW 37.12.010, as amended in 1963, states as follows:

> The state of Washington hereby obligates and binds itself to assume criminal and civil jurisdiction over Indians and Indian territory, reservations, country, and lands within this state in accordance with the consent of the United States given by the act of August 15, 1953 (Public Law 280, 83rd Congress, 1st Session), but such assumption of jurisdiction shall not apply to Indians when on their tribal lands or allotted lands within an established Indian reservation and held in trust by the United States or subject to a restriction against alienation imposed by the United States, unless the provisions of RCW 37.12.021 have been invoked, except for the following:
> (1) Compulsory school attendance;
> (2) Public assistance;
> (3) Domestic relations;
> (4) Mental illness;
> (5) Juvenile delinquency;
> (6) Adoption proceedings;
> (7) Dependent children; and
> (8) Operation of motor vehicles upon the public streets, alleys, roads and highways: *Provided further, That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.*

(Italics ours.) It is under subsection (7) of the above statute covering "Dependent children" that the State of Washington and its Department of Social and Health Services assert jurisdiction over the petitioners in this case.

Subsequent to the 1963 amendments of RCW 37.12, on

January 12, 1965, former Governor Rosellini, at the request of the Quinault Tribe, issued a proclamation declaring that the proclamation of May 15, 1958, establishing state jurisdiction over the Quinault Indian Tribe, was revoked and proclaimed null and void. The proclamation attempted to "retrocede" part of the jurisdiction of the State of Washington over the Quinault Indian Tribe to the United States government, but the federal government never accepted the return of jurisdiction offered by former Governor Rosellini. Subsequently, however, the United States Congress did enact the Act of April 11, 1968, Pub. L. No. 90-284, 82 Stat. 79, which authorized the United States to accept a retrocession by any state of all or any measure of the criminal and civil jurisdiction acquired by such state over Indian tribes and reservations. 25 U.S.C. § 1323 (1968). On August 15, 1968, again at the request of the Quinault Tribe, Governor Evans issued a proclamation declaring that former Governor Rosellini's proclamation of May 15, 1958, was revoked and null and void, and retroceded the jurisdiction exercised by the State of Washington over the Quinault Reservation, except as provided under Laws of 1963, ch. 36 (RCW 37.12.010-.060), to the United States. Thereafter, on August 30, 1969, the Secretary of the Interior, Walter J. Hickel, pursuant to 25 U.S.C. § 1323 (1968), accepted Governor Evans' proclamation of retrocession to the United States of all jurisdiction exercised by the State of Washington over the Quinault Reservation, and specifically recited that part of Governor Evans' proclamation which declared that the jurisdiction exercised by the State of Washington over the Quinault Reservation under *Laws of 1963, ch. 36* (RCW 37.12.010-.060), would be excepted from the retrocession of jurisdiction to the United States.

The petitioners' first argument in this case is that the State of Washington, by failing to amend article 26 of its state constitution, has not validly assumed jurisdiction over the Quinault Indian Tribe pursuant to the Act of August 15, 1953, ch. 505, 67 Stat. 588. We disagree. This argument was extensively considered by this court in *Ton-*

*asket v. State,* 84 Wn.2d 164, 525 P.2d 744 (1974), where we held that the *legislative* method of assuming state civil and criminal jurisdiction over Indian tribes in this state was proper under the Act of August 15, 1953, *supra,* and not in violation of our enabling act.

The petitioners next contend that even if state jurisdiction has been validly assumed under the Act of August 15, 1953, ch. 505, 67 Stat. 588, the State of Washington now has no jurisdiction over the Quinault Indians in this case since the proclamation by Governor Evans in 1968 declared the 1958 proclamation by former Governor Rosellini to be null and void, and retroceded all of the State of Washington's jurisdiction over the Quinault Indians to the federal government. The petitioners argue that even though the 1968 proclamation by Governor Evans did not retrocede to the United States any jurisdiction exercised by the State of Washington over the Quinault Reservation under Laws of 1963, ch. 36 (which includes RCW 37.12.010), the Quinault Indian Tribe, having come under the jurisdiction of the State of Washington in 1958, is exempted from RCW 37.12.010, as amended in 1963, by the express language of the proviso of that statute, which we have heretofore recited. The proviso, also referred to as the "savings clause," provides:

> That Indian tribes that petitioned for, were granted and became subject to state jurisdiction pursuant to this chapter on or before March 13, 1963 shall remain subject to state civil and criminal jurisdiction as if chapter 36, Laws of 1963 had not been enacted.

After examining the language of RCW 37.12.010 and the provisions of RCW 37.12, we find that the petitioners' argument that the State of Washington has no jurisdiction over the Quinault Indian Tribe under RCW 37.12.010 is without merit. An examination of the public policy of this state concerning Indian jurisdiction supports our conclusion that the true intent of the legislature, in amending RCW 37.12.010 in 1963, was not to exempt tribes like the Quinault Indian Tribe from the application of the statute.

As heretofore discussed in this opinion, the legislature of this state initially enacted Laws of 1957, ch. 240 (RCW 37.12) in response to the passage by congress of the Act of August 15, 1953, ch. 505, 67 Stat. 588. RCW 37.12 set forth the public policy of this state whereby the State of Washington was obligated to assume civil and criminal jurisdiction over Indians and Indian territory, reservations, country and lands within the state, if and when the tribe or its governing body adopted a resolution asking the state to do so. At the time of the passage of RCW 37.12 in 1957, the legislature of this state could have enacted legislation which would have extended state jurisdiction over Indian tribes to the extent authorized by federal law without first receiving a resolution of consent from the petitioning tribe. The legislature, however, as a matter of public policy, established the particular statutory scheme in RCW 37.12.020 of first obtaining a resolution from the particular Indian tribe before assuming jurisdiction over the petitioning tribe by proclamation of the Governor.

Subsequent to the passage of Laws of 1957, ch. 240, this court considered two cases, *State ex rel. Adams v. Superior Court*, 57 Wn.2d 181, 356 P.2d 985 (1960), and *In re Colwash*, 57 Wn.2d 196, 356 P.2d 994 (1960), which pointed out the hiatus in the law of the State of Washington at that time concerning the state's jurisdiction over Indian tribes like the Colville and Yakima tribes which had not submitted a resolution pursuant to RCW 37.12.020, for the State of Washington to assume criminal and civil jurisdiction over their respective tribes and reservations.[3]

The *Adams* case involved a review by certiorari of an order of the Juvenile Court for Okanogan County declaring certain minors to be "dependent children" whose parents were Colville Indians residing on the Colville Indian Res-

---

[3]The language of RCW 37.12.020 made a special provision for the Colville, Spokane and Yakima tribes, or reservations, in that the Governor, after receiving a resolution from one of these tribes, was not authorized to issue a proclamation unless the resolution of the tribal council was ratified by a two-thirds majority of the adult enrolled members of the tribe voting in a referendum called for that purpose.

ervation. The *Colwash* case also involved a review by certiorari of an order of the Yakima County juvenile court dismissing a dependency petition on the ground that the court lacked jurisdiction over the minor child who resided upon the Yakima Indian Reservation. In both cases we held that the court lacked jurisdiction over the minor children to enter an order of dependency.

After our determination in *Adams* and *Colwash* that the State had no jurisdiction in dependency matters over Indian tribes which had not submitted a resolution pursuant to the proclamation procedure outlined in RCW 37.12.020, it appears clear that the legislature amended RCW 37.12.010 as a part of Laws of 1963, ch. 240, to give the State jurisdiction, in dependency matters and in seven other enumerated areas, over all tribes within the state regardless of whether the tribe in question gave its consent to the state to assume jurisdiction. The only purpose the savings clause in RCW 37.12.010 could have served was to remove any ambiguity or uncertainty as to the jurisdiction which the state had previously acquired over Indian tribes by their application for the state's jurisdiction under RCW 37.12.020. The savings clause must have therefore been inserted in RCW 37.12.010 to assure those tribes, which had petitioned the Governor and had become subject to the criminal and civil jurisdiction of the State of Washington before March 13, 1963, that they would not have to resubmit a tribal resolution under the new act. To place any other construction upon the meaning of the savings clause in RCW 37.12.010 would be absurd, and would be inconsistent with the intent of the legislature in 1963 to give the state jurisdiction over all Indian tribes within the state regardless of tribal consent as to those eight enumerated areas specified in RCW 37.12.010.

We therefore hold that the provisions of RCW 37.12.010, as amended in Laws of 1963, ch. 36, apply to the petitioners under the circumstances of this case, and that the State of Washington has the jurisdiction to permanently deprive the petitioners of their parental rights over their children.

The respondents argue that the retrocession proclamation by Governor Evans in 1968, and the acceptance of the proclamation by the Secretary of the Interior in 1969, constituted an invalid retrocession of state jurisdiction over the Quinault Indian Tribe to the United States. We need not consider this question, however, to dispose of the case before us. Our holding that the State of Washington has jurisdiction over the Quinault Indian Reservation in the eight enumerated areas in RCW 37.12.010, is sufficient to decide this case since it is clear that the 1968 proclamation by Governor Evans did not attempt to retrocede any jurisdiction exercised by the state over the Quinault Reservation under RCW 37.12.010-.060 (Laws of 1963, ch. 36).

The writ of prohibition is therefore denied.

HALE, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, and BRACHTENBACH, JJ., concur.

UTTER, J. (dissenting)—My views are the same as expressed in my dissent in *Tonasket v. State*, 84 Wn.2d 164, 525 P.2d 744 (1974).

STAFFORD, J., concurs with UTTER, J.