DONALD E. PERCY, Secretary Department of Health and SocialServices
You have asked for my opinion regarding the interpretation of several jurisdictional provisions of the Indian Child Welfare Act of 1978 (ICWA), 92 Stat. 3069, 25 U.S.C. sec. 1901 et seq. You ask: *Page 238 
 1. What jurisdiction do the Indian tribes and the state have over child custody proceedings involving Indian children who reside or are domiciled within the reservation of a PL 280, Wisconsin Indian tribe or of the non-PL 280 Wisconsin Menominee Tribe? Is the tribes' jurisdiction concurrent or exclusive as to the state?
The jurisdictional relationship between the state and the Indian tribes over domestic relations matters involving tribe members is not easily defined. The following analysis will show that in some situations and under varying circumstances both state and tribal courts may have jurisdiction over certain such matters.
Indian tribes are "a separate people, with the power of regulating their internal and social relations." United States v.Kagama, 118 U.S. 375, 381-82 (1886). One such retained power is a tribe's right to regulate the domestic relations of its members.Fisher v. Dist. Court of Sixteenth Jud. Dist., 424 U.S. 382
(1976); Conroy v. Conroy, 575 F.2d 175 (8th Cir. 1978); Dept. of Interior, Federal Indian Law, at 395 (1966). Thirty years afterKagama, the United States Supreme Court again explained that "[a]t an early period it became the settled policy of Congress to permit the personal and domestic relations of the Indians with each other to be regulated . . . according to their tribal customs and laws." United States v. Quiver, 241 U.S. 602, 603-04
(1916).
In Williams v. Lee, 358 U.S. 217, 220 (1959), the Court reaffirmed "the right of [Indian tribes] to make their own laws and be ruled by them," by declaring that states should refrain from exercising jurisdiction where essential tribal relationships are involved. Family matters, including child custody, involving members domiciled or living on the reservation, are essential tribal relations. See Fisher; Wisconsin Potowatomies, etc. v.Houston, 393 F. Supp. 719 (W. D. Mich. 1973); Matter of Adoptionof Buehl, 87 Wash. 2d 649, 555 P.2d 1334 (1976); Wakefield v.Little Light, 276 Md. 333, 347 A.2d 228 (1975); State v. SuperiorCourt, 57 Wash. 2d 181, 356 P.2d 985 (1960); and In re Colwash,57 Wash. 2d 196, 356 P.2d 994 (1960). Also see 37 Op. Att'y Gen. 213 (1948) concluding that state law does not apply to domestic relations of Indians on reservations. *Page 239 
The general rule is that before state jurisdiction can be extended over tribe members on a reservation it must be specifically authorized by federal legislation. McClanahan v.State Tax Commission of Arizona, 411 U.S. 164 (1973); Iron Crowv. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8th Cir. 1956). The ICWA is the only act of Congress expressly dealing with Indian child custody proceedings. It provides: "An Indian tribe shall have jurisdiction exclusive as to any State over anychild custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law." 25 U.S.C. sec. 1911(a).
Although the act's definition of "child custody proceeding" is extremely broad, it excludes delinquency actions or placements based upon an act which, if committed by an adult, would be deemed a crime. Also excluded are divorce proceedings involving the award of custody to one of the parents. This opinion therefore will apply only to the domestic relations matters covered by the ICWA.
The first question that must be considered is whether Wisconsin has been "otherwise vested" with jurisdiction in child custody matters by existing federal law. For the reasons stated hereinafter, it is my opinion that except in limited circumstances the state has not been granted general jurisdiction over child custody matters involving Indian children who reside or are domiciled within a reservation. The limited exception is based on a federal statute and the exercise of state sovereign powers in such matters.
The only federal statute which may grant the state some jurisdiction in such matters is Pub.L. No. 280 (67 Stat. 558,28 U.S.C. sec. 1360, 18 U.S.C. sec. 1162), which was enacted on August 15, 1953. This statute gave the State of Wisconsin limited civil and general criminal jurisdiction in "all Indian country within the state except the Menominee Reservation." The Menominee were subsequently brought within the coverage of Pub.L. No. 280, but were removed again effective March 1, 1976. See La Tender v.Israel, 584 F.2d 817, 821 (7th Cir. 1978). It is therefore clear that no federal statute authorizes the State of Wisconsin to exercise child custody jurisdiction over the Menominee Reservation. *Page 240 
It is my opinion that Pub.L. No. 280 (28 U.S.C. sec. 1360 (a)) does not grant general jurisdiction over child custody matters to Wisconsin courts. The courts have narrowly construed the legislative grant of civil jurisdiction to the states under Pub.L. No. 280, which provides in part that certain named states "shall have jurisdiction over civil causes of action between Indians or to which Indians are parties."
In Bryan v. Itasca Cty., Minnesota, 426 U.S. 373 (1976), the United States Supreme Court stated unequivocally that the Pub.L. No. 280 reference to "civil causes of action" did not confer civil regulatory jurisdiction on the states. Although the court did not define "civil causes of action," it noted one commentator's suggestion that:
 Congress intended `civil laws' to mean those laws which have to do with private rights and status. Therefore, `civil laws . . . of general application to private persons or private property' would include the laws of contract, tort, marriage, divorce, insanity, descent, etc., but would not include laws declaring or implementing the states' sovereign powers, such as the power to tax, grant franchises, etc.
Bryan, 426 U.S. at 384 fn. 10. The Court concluded that the intention of Congress in extending civil jurisdiction to states was to "redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by [sic] permitting the courts of the States to decide such disputes." 426 U.S. at 383. The Court noted (Id. at 389) that Congress conditioned the exercise of this limited jurisdictional grant by requiring, among other things, that states accord "full force and effect" to any tribal ordinance or custom "heretofore or hereafter adopted by an Indian Tribe . . . if not inconsistent with any applicable civil law of the State." 28 U.S.C. sec. 1360 (c). (Compare25 U.S.C. sec. 1911 (d), which provides: "[E]very State . . . shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings.") The Court concluded that Pub.L. No. 280 was not enacted to subordinate Indians to the full panoply of state civil regulatory powers which would destroy tribal self-government.Id. at 388. *Page 241 Also see, 65 Op. Att'y Gen. 276 (1976) and 69 Op. Att'y Gen. 183 (1980).
Your question does not differentiate among the different and varied child custody proceedings that may arise. It is assumed, for purposes of this opinion, that your concern is with those proceedings that involve some aspect of the state's regulatory jurisdiction such as involuntary termination of parental rights. By comparison, where the proceeding is not between the state and an individual, but rather primarily involves only private persons as in a voluntary foster care placement, state law may be applied under Pub.L. No. 280's jurisdictional grant. Since Pub.L. No. 280 does not provide a basis for the state to exercise regulatory jurisdiction in child custody matters, it is necessary to consider whether there is some other basis upon which the state can act, i.e., whether there is any other source of federal law which vests such jurisdiction in the state.
In White Mountain Apache Tribe v. Bracker, 448 U.S. 136 (1980), the United States Supreme Court defined two independent barriers to the assertion of state regulatory authority over tribe members and reservations. One is infringement on the right of reservation Indians to make their own laws and be ruled by them (Williams v.Lee, 358 U.S. 217 (1959)), and the other is preemption by federal law.
Federal and state case law establishes that the exercise of state jurisdiction over most custody matters involving Indian children on the reservation infringes the right of tribe members to govern themselves. In Santa Clara Pueblo v. Martinez, 436 U.S. 49,59 (1978), the United States Supreme Court declared that in matters involving domestic relations:
 [W]e have recognized that "subject[ing] a dispute arising on the reservation among reservation Indians to a forum other than the one they have established for themselves," Fisher v. District Court, 424 U.S. 382, 387-388, 96 S.Ct. 943, 947, 47 L.Ed.2d 106 (1976), may "undermine the authority of the tribal cour[t] . . . and hence . . . infringe on the right of the Indians to govern themselves." Williams v. Lee, 358 U.S., at 223, 79 S.Ct. at 272. *Page 242 
Other courts have said "`there can be no greater threat to "essential tribal relations," and no greater infringement on the right of the . . . [t]ribe to govern themselves than to interfere with tribal control over the custody of their children.'" Matterof Adoption of Buehl, 87 Wash. 2d at 662, 555 P.2d at 1342
(1976); Wakefield, 347 A.2d at 237-38. Also see WisconsinPotowatomies, etc., 393 F. Supp. at 730, "[i]f tribal sovereignty is to have any meaning at all at this juncture of history, it must necessarily include the right . . . to provide for the care and upbringing of its young, a sine qua non to the preservation of its identity."
It is my understanding that most tribes in Wisconsin have adopted procedures to handle some child custody proceedings under the ICWA as well as domestic relations matters not covered by the Act. It is therefore my opinion that the exercise of state regulatory jurisdiction over tribe members residing on a reservation where the tribe is exercising jurisdiction over child custody matters constitutes an impermissible infringement upon tribal sovereignty. If a tribe is not exercising such jurisdiction, it is unlikely that a court would find that state action infringes upon that tribe's sovereignty.
The ICWA also operates to preempt state action in custody matters involving Indian children beyond those areas of authority delegated under the Act. The federal policy behind the ICWA is clearly that of "keeping Indian children with their families, deferring to tribal judgment on matters concerning the custody of tribal children, and placing Indian children who must be removed from their homes within their own families or Indian tribes."Guidelines for State Courts, (hereinafter, Guidelines)44 Fed. Reg. 67,592 (1979). The Code of Federal Regulations acknowledges that the extent to which federal acts (such as Pub.L. No. 280) have subjected Indian child custody proceedings to state jurisdiction is unsettled and therefore the ICWA includes a provision which allows tribes to reassume exclusive jurisdiction over such matters (25 U.S.C. sec. 1918) "without relinquishing their claim that no federal statute had ever deprived them of that jurisdiction." 25 C.F.R. sec. 13.1 (b) (1980).
The Lac Courte Oreilles Band of Lake Superior Chippewa is the only tribe in Wisconsin that has utilized 25 U.S.C. sec. 1918 to "reassume" exclusive jurisdiction over Indian child custody proceedings. *Page 243 
The tribe's petition was granted effective May 5, 1981,46 Fed. Reg. 15,579 (1981).
Although utilizing this procedure would remove any uncertainty regarding the effect of Pub.L. No. 280 in this subject area, it is my opinion that it is unnecessary, except perhaps for proceedings that do not involve civil regulatory jurisdiction. For nonregulatory proceedings, such as voluntary termination of parental rights, the tribal courts, and state courts pursuant to Pub.L. No. 280, have concurrent jurisdiction. To eliminate this limited concurrent jurisdictional relationship over private child custody matters covered by the ICWA and within the Pub.L. No. 280 definition of "civil causes of action," the tribe would either have to comply with 25 U.S.C. sec. 1918 and reassume exclusive jurisdiction or the state would have to retrocede its civil causes of action jurisdiction pursuant to 25 U.S.C. sec. 1323
(a). As already indicated, the state retroceded all Pub.L. No. 280 jurisdiction over the Menominee Tribe effective March 1, 1976.
The history behind the ICWA lends additional support to the opinion expressed herein. The history of state intervention in Indian child custody proceedings nationally has shown state courts to be insensitive to Indian values and culture. Because state officials in some areas of the United States have tended to misinterpret Indian child rearing practices, statistics show that a disproportionate number of Indian children have been removed from their homes in comparison to non-Indian children. For this reason the ICWA confirmed that Indian tribes rather than states play the central role in child custody proceedings involving Indian children. S. Rep. No. 597, 95th Cong., 1st Sess. 35 (1977).
Reading the ICWA against "a backdrop of Indian sovereignty,"McClanahan v. State Tax Commission of Arizona, 411 U.S. 164, 173
(1976), and applicable federal and state case law, and taking into consideration tribal assertion of jurisdiction, leads to the inescapable conclusion that "Pub.L. No. 280 and non-Pub.L. No. 280 Wisconsin Indian tribes" have exclusive regulatory
jurisdiction over child custody proceedings involving Indian children who reside or are domiciled within the reservation. *Page 244 
The term "domicile" in the ICWA is a legal concept that depends on intent. A person does not abandon an old domicile until a new one has been established. An Indian child may be domiciled on a reservation without being physically present there. Likewise an Indian child may be residing on the reservation even though legally domiciled off the reservation. If the parent with whom the child lives maintains strong ties to the tribe and the reservation, then even though the child is temporarily located off the reservation, his or her domicile remains within it. SeeWisconsin Potowatomies, etc. The Guidelines, 44 Fed. Reg. 67,588
(1979), provide that the state court shall determine the residence or domicile of the Indian child. If either theresidence or domicile is on a reservation where the tribe exercises exclusive jurisdiction over child custody proceedings, the proceeding in state court shall be dismissed.
 2. What jurisdiction do the Indian tribes and the state have over child custody proceedings involving Indian children who are not residing or domiciled within the reservation of a PL 280 Wisconsin Indian tribe or of the non-PL 280 Wisconsin Menominee Tribe? Is the state's jurisdiction exclusive or concurrent as to the tribes?
The Indian Child Welfare Act (25 U.S.C. sec. 1911 (a)) provides that if an Indian child has previously resided or been domiciled on a reservation, the state court must contact the tribe to see if the child is a ward of the tribal court. If it is determined that the child is a ward of the tribal court, the tribe has exclusive jurisdiction and the proceeding must be dismissed.
Any child who is not a ward of the tribal court who is off the reservation has generally the same rights and is subject to the jurisdiction of state courts to the same extent as non-Indian citizens. Mescalero Apache Tribe v. Jones, 411 U.S. 145 (1973);See F. Cohen, Handbook of Federal Indian Law, at 119 (1942 ed.). Cohen points out that there is an exception to this general rule. "If the subject matter of the transaction is a subject matter over which Congress has asserted its constitutional power, the state must yield to the superior power of the nation." Id. *Page 245 
Wisconsin normally would have exclusive jurisdiction over child custody proceedings involving children not domiciled or residing on a reservation. In cases involving foster care placement or termination of parental rights, the state, however, may be required to transfer jurisdiction to the child's tribe because of federal preemption. The ICWA (25 U.S.C. sec. 1911 (b)) provides:
 In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
According to the ICWA's legislative history, the intention of this subsection was to ensure that state courts would apply a modified doctrine of forum non conveniens in these two types of proceedings to ensure that the rights of the child, the parent or custodian, and the tribe are protected. H.R. Rep. No. 1386, 95th Cong., 2d Sess. 21, reprinted in [1978] U.S. Code Cong. Ad.News 7530, 7544. The doctrine generally gives a court discretionary authority to decline jurisdiction. See, e.g.,Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 527
(1947); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). Ordinarily, courts apply the doctrine to refuse jurisdiction and to transfer the action to an alternate forum. See, e.g., Herbstv. Able, 278 F. Supp. 664, 666 (S.D. N.Y. 1967); Grubs v.Consolidated Freightways, Inc., 189 F. Supp. 404, 408 (D. Mont. 1960).
"Good cause" for not transferring a proceeding to tribal court may include, for example, the various criteria set forth in theGuidelines:
 (a) Good cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.
 (b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists: *Page 246 
 (i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.
 (ii) The Indian child is over twelve years of age and objects to the transfer.
 (iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.
 (iv) The parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.
Guidelines, 44 Fed. Reg. 67,591 (1979). The federal government has thus qualified the power of the state in proceedings involving the foster care placement of, or termination of parental rights to, Indian children not domiciled or residing within the reservation of the Indian child's tribe by requiring transfer to tribal court in the absence of good cause to the contrary or objection by either parent.
In other types of child custody proceedings relating to Indian children not domiciled or residing within the reservation of the Indian child's tribe, the Act does not require transfer to tribal court. (See discussion following question no. 4.)
 3. May a state court transfer jurisdiction over a foster care placement or termination of parental rights proceeding under 25 U.S.C. § 1911 (b) to any Wisconsin tribe or only to the Menominee Tribe if the conditions of 1911 (b) are met?
For the reasons already stated, a state court must transfer jurisdiction over a foster care placement or termination of parental rights proceeding under 25 U.S.C. sec. 1911(b) to any Wisconsin tribe if the conditions of that section are met.
 4. May a state court transfer jurisdiction to a tribe over a child custody proceeding involving an Indian child if the child resides or is domiciled within the tribe's reservation? *Page 247 
A state court must transfer jurisdiction to the Menominee Tribe and the Lac Courte Oreilles Band over any child custody proceeding involving an Indian child if the child resides or is domiciled within the respective reservation. Similarly, a state court must transfer jurisdiction to the Indian tribes over a child custody proceeding involving an Indian child if the child resides or is domiciled within the reservation and the case involves the exercise of state regulatory jurisdiction. Except for matters arising on the Menominee and Lac Courte Oreilles Reservations, it is within the discretion of the court in those proceedings which do not involve state regulatory jurisdiction whether to defer a matter to tribal court. Since the tribe member has voluntarily chosen to utilize the state court rather than the tribal court it is unlikely that there would be a transfer although the court could apply the doctrine of forum nonconveniens in appropriate cases of this nature as well. (See
discussion in response to question no. 2.)
 5. May a state court transfer jurisdiction to a tribe over a proceeding for preadoptive or adoptive placement of an Indian child?
The answer to this question depends on whether or not the child resides or is domiciled within the reservation of the child's tribe. The answer also is affected by whether the proceeding is voluntary or involuntary.
Preadoptive and adoptive placements are included within the term "child custody proceeding." 25 U.S.C. sec. 1903. Subsection (a) of 25 U.S.C. sec. 1911, which deals with cases where a child is domiciled on the reservation, applies to "any child custody proceeding." As already indicated, if the Indian child resides or is domiciled within a reservation, a state court must transfer jurisdiction to the tribe over these two types of proceedings if the proceeding depends upon the exercise of regulatory jurisdiction as in any involuntary proceeding. Tribe members subject to Pub.L. No. 280, of course, retain the right in voluntary child custody proceedings to utilize state courts and state law in the absence of applicable tribal law. See28 U.S.C. sec. 1360 (c). In the event a tribe reassumes jurisdiction pursuant to the procedures set forth in 25 U.S.C. sec. 1918, jurisdiction which it now shares with the state under Pub.L. No. 280 (28 U.S.C. sec. 1360), tribal courts would have exclusive jurisdiction in such matters. *Page 248 
If the Indian child is not residing or domiciled within the reservation, 25 U.S.C. sec. 1911 (b) applies. Since subsection (b) mentions only proceedings for foster care placement or termination of parental rights, the Act does not require state courts to transfer a proceeding for preadoptive or adoptive placement of an Indian child not residing or domiciled on the reservation. The court, of course, could apply the doctrine offorum non conveniens in these cases also.
 6. May a state court transfer jurisdiction to a tribe over a proceeding under 25 U.S.C. § 1911 (b) if the tribal court, as defined in 25 U.S.C. § 1903 (12), does not have jurisdiction over child custody proceedings?
 25 U.S.C. sec. 1911 (b) provides that a state court shall transfer jurisdiction to a tribe "in the absence of good cause to the contrary." The Guidelines, published by the Department of Interior, (quoted above; see question no. 2), states that "[g]ood cause not to transfer the proceeding exists if the Indian child's tribe does not have a tribal court as defined by the Act."44 Fed. Reg. 67,591 (1979). The definition of "tribal court" in25 U.S.C. sec. 1903 (12) is intended to include tribally established administrative tribunals, commissions, or any other alternative tribal adjudicatory mechanism given jurisdiction by the tribe over child welfare matters. S. Rep. No. 597, 95th Cong., 1st Sess. 43 (1977). If a tribe has not established any mechanism for exercising jurisdiction over child custody proceedings, a state court could find that such fact constitutes good cause for not transferring jurisdiction. (Also see discussion infra regarding questions 7 and 8.)
Your final two questions are interrelated and therefore they will be considered together.
 7. Which Wisconsin tribes, if any, do not have tribal courts with jurisdiction over child custody proceedings?
 8. What criteria should be used to determine whether a tribal court has jurisdiction over child custody proceedings?
There appear to be at least two conditions that must be met before a tribe can assume exclusive jurisdiction over child custody proceedings *Page 249 
under the ICWA. First, the tribe's constitution (if it has a constitution) must not disclaim jurisdiction over child custody proceedings. Second, the tribe must have an established mechanism which has been given the power to deal with child custody matters.
Typically, tribal constitutions make reference to very general powers although often vaguely described. Whether an ambiguous phrase encompasses or delegates a specific power is a matter of interpretation.
Indian tribes retain "attributes of sovereignty over both their members and their territory." United States v. Mazurie, 419 U.S. 544,557 (1975). A crucial attribute of sovereignty is a government's right to interpret its own organizational documents. Recognizing this, federal courts have ruled that they lack "`any general power to review and oversee the Tribal Courts in their resolution of questions concerning the authority and power of Tribal Courts.'" Conroy, 575 F.2d at 177. Also see Federal IndianLaw, at 403 (1966).
Since, "[t]he right of tribal self-government is ultimately dependent on and subject to the broad power of Congress" (WhiteMountain Apache Tribe, 448 U.S. at 143), it is necessary to inquire whether the ICWA or any other federal act limits a tribe's right to decide for itself if its constitution disclaims jurisdiction over child custody matters. The ICWA does not reach this issue.
The 1934 Indian Reorganization Act (IRA), however, does deal with the organization of tribal governments. 25 U.S.C. sec. 476. Nothing in this statute (nor in the federal regulations enacted under it) qualifies inherent tribal governmental authority over child custody proceedings involving tribe members domiciled or residing on the reservation. As already indicated, an Indian tribe has inherent authority to determine what meaning attaches to its own constitutional language. See Tom v. Sutton, 533 F.2d 1101,1106 (9th Cir. 1976). It is, therefore, highly unlikely that a state court would have reason to question the governmental power of a tribe under its constitution.
Once it is determined that a tribe's constitution does not disclaim jurisdiction over child custody matters, one can turn to the question *Page 250 
of whether the tribe has a "tribal court," as defined in25 U.S.C. sec. 1903 (12):
 "[T]ribal court" means a court with jurisdiction over child custody proceedings and which is either a Court of Indian Offenses, a court established and operated under the code or custom of an Indian tribe, or any other administrative body of a tribe which is vested with authority over child custody proceedings.
State courts will give great weight to a tribe's own determination as to its capacity to exercise jurisdiction under the ICWA. The above mentioned Guidelines support giving the tribes primary responsibility for judging the adequacy of their own institutions. "[R]eservation socio-economic conditions and the perceived adequacy of tribal institutions are not to be taken into account in making good cause determinations . . . the Department believes such judgments are best made by tribal courts." 44 Fed. Reg. 67,592 (1979). The Guidelines point out that this approach is in keeping with the established congressional policy under the ICWA of "preferring tribal control over custody decisions affecting tribal members."
BCL:JDN