[No. 18415-3-III.   Division Three.   September 12, 2000.]

BART HOWE, ET AL., *Appellants*, v. DOUGLAS COUNTY, *Respondent*.

---

*Brian J. Dorsey* (of *Davis Arneil Law Firm*), for appellants.

*Robert R. Siderius, Jr.* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for respondent.

SWEENEY, J. — This is a land use case. Douglas County required the developer of Bart and Connie Howe's subdivision to waive "all claims for damages against any governmental authority arising from the construction or maintenance of public facilities . . . ." The Howes' property was flooded because of either poorly designed or maintained drainage facilities. The question here is whether public policy considerations prohibited the County from requiring a general waiver of liability as a condition for annexation of this subdivision; we agree with the trial court that they do not. We therefore affirm the summary dismissal of the Howes' claims for damages.

## FACTS

Fancher Heights Associates developed Fancher Heights, a residential subdivision, in East Wenatchee, Washington. As part of the permit process, it solicited comments from governmental agencies. The U.S. Department of Agriculture's (USDA) Soil Conservation Service responded that at least some of the lots were susceptible to flooding. Roofs, pavement, and the general development of the area exacerbated the problem. Several months later the USDA again voiced concerns because streets proposed in the subdivision cut across natural drainage ways. The South Douglas County Conservation District agreed with the concerns voiced by the USDA.

Fancher Heights Associates submitted drainage plans that would have accommodated a 10-year flood. Douglas County responded by requiring the drainage plan to accommodate a 25-year flood. The County did so because of the concerns expressed by the governmental agencies.

Fancher Heights Associates constructed the storm drainage system in November 1988. It then transferred owner-

ship and maintenance of the improvements to Douglas County. As a condition of final approval, Fancher Heights Associates agreed to "waive on behalf of themselves and their successors in interest, all claims for damages against any governmental authority arising from the construction and maintenance of public facilities and public property within the subdivision."

The Howes bought a lot in the subdivision in November 1992. Their property is located on a cul-de-sac at the base of a natural drainage channel. The warranty deed conveying title refers to the waiver given by the County as part of the annexation process.

Surface water runoff from three rainstorms caused the drainage system in Fancher Heights to fail on May 31, 1993, July 4, 1994, and August 25, 1994. The runoff flooded and damaged the Howes' property. The storm drains overflowed, apparently because the County had not cleaned sand from catch basins and dry wells. County employees also told the Howes that the single catch basin and dry well at the bottom of the cul-de-sac could not handle the water. The County added a new dry well and a slotted culvert/trench drain to improve the drainage.

The Howes sued Douglas County for damages caused by these three storms. The County ultimately settled and the dispute was resolved.

The Howes' property flooded again on June 21, 1997, following a rainstorm. Again, the catch basins and dry wells failed. In November of 1997, the County installed two dry wells above the Howes' cul-de-sac.

The Howes sued Douglas County for negligence. That lawsuit is the subject of this appeal. The County moved for summary judgment, relying primarily on the waiver of damages claims by the Howes' predecessor, Fancher Heights Associates, the developer. The trial judge agreed and dismissed the Howes' claims.

## ANALYSIS

■■ Standard of Review. The dispositive question here is whether the developer's waiver is void because it is contrary to public policy. This is a legal question. And so the standard of review is de novo. *Mountain Park Homeowners Association v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). Other questions raised, including whether the County was negligent; whether the County is protected by the public duty doctrine; or whether the damage occasioned by this flood was a result of improper construction, design or improper maintenance, all fall by the wayside if the developer's waiver is valid and enforceable.

■ Waiver. Pronouncement of public policy falls within the domain of democratically elected legislators, unless some clear constitutional provision is implicated. But none is here. So to identify the relevant public policy considerations, we look at any applicable statutes. *In re Marriage of Burke*, 96 Wn. App. 474, 478, 980 P.2d 265 (1999); *Allstate Ins. Co. v. Raynor*, 93 Wn. App. 484, 499-500, 969 P.2d 510, 975 P.2d 517, 980 P.2d 765, *review granted*, 139 Wn.2d 1001 (1999).

The Legislature has not been reluctant to declare public policy in a wide range of areas. *Waterjet Tech., Inc. v. Flow Int'l Corp.*, 140 Wn.2d 313, 322, 996 P.2d 598 (2000) (employment agreements); *National Elec. Contractors Ass'n, Cascade Chapter v. Riveland*, 138 Wn.2d 9, 40, 978 P.2d 481 (1999) (favoring prison industries); *In re Discipline of Turco*, 137 Wn.2d 227, 268, 970 P.2d 731 (1999) (Sanders, J., dissenting) (domestic violence); *Niece v. Elmview Group Home*, 131 Wn.2d 39, 61-62, 929 P.2d 420 (1997) (Johnson, J., concurring in part and dissenting in part) (rights of developmentally disabled); *Comenout v. Burdman*, 84 Wn.2d 192, 200, 525 P.2d 217 (1974) (jurisdiction over Native Americans and reservations); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 838-39, 435 P.2d 626 (1967) (fireworks); *First Nat'l Bank v. Tiffany*, 40 Wn.2d 193, 202, 242 P.2d 169 (1952) (homestead and exemption laws); *Smaby v. Shrauger*, 9 Wn.2d 691, 699, 115 P.2d 967

(1941) (wage earners); *Burke*, 96 Wn. App. at 480 (child welfare dissolution action); *Children's Hosp. & Med. Ctr. v. Department of Health*, 95 Wn. App. 858, 865 n.13, 975 P.2d 567 (1999) (health care), *review denied*, 139 Wn.2d 1021 (2000); *Raynor*, 93 Wn. App. at 499-500 (insurance contracts); *Roberts v. Dudley*, 92 Wn. App. 652, 656-57, 966 P.2d 377 (1998) (gender discrimination), *aff'd*, 140 Wn.2d 58, 993 P.2d 901 (2000).

And the courts appropriately proceed very cautiously in declaring public policy. *Roberts*, 92 Wn. App. at 656-57.

The Howes argue that the County should not be allowed to avoid a statutorily imposed obligation (review of privately developed public works) by requiring a waiver. Specifically, they rely on RCW 58.17.110 that gives the County authority to approve or disapprove subdivisions. In doing so, the County can consider open spaces, drainage ways, streets, roads, alleys, and the like. RCW 58.17-.110(1)(a).

█ First of all, we do not read RCW 58.17.110 as subjecting a municipality to liability for the inadequacy of various improvements required as part of annexation. The municipality is required to "determine . . . [i]f appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets or roads, alleys, other public ways, transit stops, potable water supplies, sanitary wastes, parks and recreation . . . ." RCW 58.17.110(1)(a). Douglas County, by passing upon the improvements in this subdivision, performed this legislative act. *See* RCW 58.17.110; *Miller v. City of Port Angeles*, 38 Wn. App. 904, 913, 691 P.2d 229 (1984). Neither the language of the act nor case law suggests that the statute would subject the County to liability if any of its required provisions or improvements failed. RCW 58.17.110; *Miller*, 38 Wn. App. at 913. The County is not a guarantor of these public improvements. It would therefore not be against public policy, at least based on this statute, to require a waiver of liability as a condition of annexation.

■ Again because the declaration of public policy is a legislative function, we look to the related statutory schemes and the applicable statutes here. RCW 58.17.165 permits a municipality to require a waiver of damages "occasioned to the adjacent land by the established construction, drainage and maintenance of said *road.*" (Emphasis added.) The Howes argue that this statute focuses on *roads* only and therefore would not include the drainage system here. We disagree. First, drainage is necessarily incident to public streets and roads. A landowner is required to construct drainage and maintenance facilities secondary to the roads and the subdivision. 11 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 31.18 (3d rev. ed. 1991). But even accepting the Howes' argument that the statute does not specifically address the drainage facilities here, the statute, nonetheless, shows at least a legislative policy to allow a waiver of liability as a condition of acceptance of a subdivision. Or, said another way, at least it evidences no legislative hostility to such waivers. Nor do we find any such hostility in any of the statutes in this statutory scheme.

■ The plat dedication statute, RCW 58.17.110, also suggests no legislative intent to prohibit waivers. That statute precludes only a release from damages from "other property owners." This has been interpreted as applying to property owners *not in the subdivision. See* 1970 Op. Att'y Gen. No. 1.

The Howes rely on *Employco Personnel Services, Inc. v. City of Seattle*[1] for their argument that the waiver of liability here is against public policy. The court in *Employco* analyzed the question much the same way as we have here. In *Employco*, several downtown Seattle business owners sued Seattle City Light following a lengthy power outage. Their claim was that the City had negligently failed to locate and identify its own underground electrical facilities, and as a result a contractor damaged those facilities.

[1] 117 Wn.2d 606, 614, 817 P.2d 1373 (1991).

The City had as part of its rate-making authority passed former Seattle Municipal Code 21.49.110(S), which essentially immunized the City for any claim of damages:

> "The Department shall not be liable for any loss, injury, or damage resulting from the interruption, restoration, or reduction of electric service from any cause, including but not limited to the failure of generation and distribution systems . . . ."

*Employco*, 117 Wn.2d at 610, 614 (emphasis omitted). But the Supreme Court noted that the ordinance was directly contrary to a state statute, RCW 80.04.440, which imposed liability on such public service companies:

> "In case any public service company shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by any law of this state, by this title or by any order or rule of the commission, such public service company *shall be liable* to the persons or corporations affected thereby for all loss, damage or injury caused thereby or resulting therefrom . . . ."

*Employco*, 117 Wn.2d at 613 n.4 (emphasis added). The court went on to note that the "City may exercise only such power as is delegated to it by the Legislature." *Id.* at 617. Clearly, the Seattle ordinance was contrary to a Washington statute. The court then ruled the ordinance invalid because it contravened state statute and was preempted by state statute. *Id.* at 618.

Here, there is no such prohibition. And, as we have noted, related statutes suggest a legislative policy authorizing such waivers. Moreover, the waiver here is the result of an agreement between the County and a developer. Unlike the waiver obligation in *Employco*, it is not a blanket statute immunizing Douglas County of any liability.

■ The Howes next argue that the waiver runs contrary to the abolition of governmental immunity. RCW 4.96.010. But the abolition of sovereign immunity did nothing more than expose governmental entities, including counties, to the same potential liability as any individual or corpora-

tion. *J&B Dev. Co. v. King County*, 29 Wn. App. 942, 951-52, 631 P.2d 1002 (1981), *aff'd*, 100 Wn.2d 299, 669 P.2d 468, 41 A.L.R.4th 86 (1983). It did not create a different sort of liability against municipalities. *Georges v. Tudor*, 16 Wn. App. 407, 411 n.3, 556 P.2d 564 (1976). Nothing in the statute abolishing governmental immunity suggests that a government entity, now subject to potential liability, cannot take steps to avoid or insulate itself from that liability much as any private citizen or organization can and does. RCW 4.96.010.

In sum, we hold that neither the public policy of this state nor the abolition of sovereign immunity prohibits Douglas County from requiring a liability waiver as a condition of annexation of a subdivision.

The judgment of the trial judge is affirmed.

SCHULTHEIS and KATO, JJ., concur.

Reconsideration denied November 3, 2000.

Review granted at 143 Wn.2d 1013 (2001).